621 F.2d 491
 Ethel CALDWELL, Individually and on behalf of all other
persons similarly situated, Plaintiff-Appellee,
and
Ella McCullough, Janet Richmond, Agnes Grant and Muriel
Rothstein, as next friend of Belle Barnett, Individually and
on behalf of all other persons similarly situated,
Plaintiffs-Intervenors-Appellees,
v.
Barbara BLUM, as Commissioner of the New York State
Department of Social Services, Defendant-Appellant,
and
James L. Covert, as Commissioner of the Madison County
Department of Social Services, Madison County, New York,
John L. Lascaris, as Commissioner of the Onondaga County
Department of Social Services, Onondaga County, New York,
Joseph P. Menaldino, as Commissioner of the Warren County
Department of Social Services, Warren County, New York,
Robert E. Laundree, as Commissioner of the Essex County
Department of Social Services, Essex County, New York,
Gabriel T. Russo, as Commissioner of the Monroe County
Department of Social Services, Monroe County, New York,
Defendants-Appellees.
Anita PERITO and James Perito, Individually and on behalf of
all others similarly situated, Plaintiffs-Appellees,
and
Louis Friedman, Plaintiff-Intervenor-Appellee,
v.
Barbara BLUM, Individually and as Commissioner of the New
York State Department of Social Services,
Defendant-Appellant,
and
Blanche Bernstein, Individually and as Commissioner of the
New York City Department of Social Services,
Defendant-Appellee.
Jennie LANDERS, Plaintiff-Appellee,
and
Josephine Maniccia, Plaintiff-Intervenor-Appellee,
v.
Barbara BLUM, Individually and as Commissioner of the New
York State Department of Social Services,
Defendant-Appellant,
and
David R. Adinolfi, as Commissioner of the Cortland County
Department of Social Services, Cortland County,
New York, Defendant-Appellee.
Julia WHITLOCK, Plaintiff-Appellee,
v.
Barbara BLUM, as Commissioner of the New York State
Department of Social Services, Defendant-Appellant,
and
Robert Wagner, as Commissioner of the Tompkins County
Department of Social Services, Tompkins County,
New York, Defendant-Appellee.
 No. 718, Docket 79-7864.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 18, 1980.
Decided April 16, 1980.
 
 Clifford A. Royael, Albany, N. Y. (Robert Abrams, Atty. Gen. of the State of New York, Jeremiah Jochnowitz, Asst. Sol. Gen., Alan W. Rubenstein, Albany, N. Y., of counsel), for appellant State Commissioner of Social Services.
 Rene H. Reixach, Jr., Greater Upstate Law Project, Rochester, N. Y., for plaintiffs-appellees and plaintiffs-intervenors-appellees.
 Before FRIENDLY, MANSFIELD and KEARSE, Circuit Judges.
 MANSFIELD, Circuit Judge:
 
 
 1
 The Commissioner of the New York State Department of Social Services appeals from a decision and order of the District Court for the Northern District of New York entered by Judge Howard G. Munson on December 3, 1979, which granted the application of plaintiffs (aged, blind or disabled New York residents who had been denied medical assistance benefits because of their transfers of their property to others) for class certification and a preliminary injunction restraining the enforcement of N.Y. Social Services Law § 366(1)(e),[1] and Regulation 18 N.Y.C.R.R. 360.8,[2] and denied the Commissioner's motion to dismiss the action. The statute and regulation deny Medicaid benefits to persons who have made property transfers for the purpose of receiving medical assistance benefits.
 
 
 2
 Federal jurisdiction was invoked on the ground that the state statute and regulation denied plaintiffs due process and equal protection of the laws. Injunctive relief was granted on the ground that the New York transfer-of-assets restriction violates the Social Security Act, 42 U.S.C. § 1396a(a)(10)(C) (i).[3] We affirm the grant of preliminary relief, substantially for the reasons stated by Judge Munson, and dismiss as interlocutory and nonappealable defendant's cross-appeal from the orders granting class action status and denying dismissal of the action.
 
 
 3
 Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396k, authorizes each state to participate in a cooperative federal-state program for medical assistance to the needy, known as Medicaid, and to operate a medical assistance plan, subject to federal statutory and regulatory guidelines. If a state chooses to participate, it must adopt a statutory plan setting forth the coverage to be extended to recipients, including the terms upon which individuals will be eligible and it must extend benefits to those who are eligible for federally-funded financial assistance, such as recipients of Supplementary Security Income (SSI) for the aged, blind and disabled, known as the "categorically needy." In addition, a participating state may elect to provide for payment for medical services to those aged, blind or disabled individuals, known as the "medically needy," whose incomes or resources, while exceeding the financial eligibility requirements for the categorically needy (such as an SSI recipient) are insufficient to pay for necessary medical care.
 
 
 4
 New York elected to participate in the Medicaid program and to pay benefits to the "medically needy" upon their meeting eligibility requirements specified in N.Y. Social Services Law, § 366. The issue now before us is whether New York's statutory eligibility requirements for the medically needy are compatible with applicable federal law.
 
 
 5
 It is undisputed that New York imposes more restrictive eligibility requirements on the medically needy than on the categorically needy. Under the Social Security Act and regulations thereunder, a "categorically needy" applicant for SSI benefits, whose assets exceed the program's eligibility limits, may by disposing of his excess assets become eligible for Medicaid benefits, 42 U.S.C. § 1382b(b),[4] 42 C.F.R. § 435.120(b),[5] Social Security Manual at § 12507. However, under the N.Y. Social Services Law, § 366(1)(e) and regulations thereunder, 18 N.Y.C.R.R. 360.8, a voluntary transfer of assets in order to qualify for or maintain eligibility for medicaid benefits (or to defeat recovery of medical assistance already paid, see N.Y. Social Services Law, § 369(1)(b)) renders a medically needy person ineligible for Medicaid benefits.[6]
 
 
 6
 The issue here turns on whether, as plaintiffs contend, the language of the Social Security Act, 42 U.S.C. § 1396a prohibits the State from thus imposing more restrictive eligibility requirements upon the medically needy than upon the categorically needy. Plaintiffs rely principally on § 1396a(a)(10)(C)(i), which obligates states that have chosen to include the medically needy in their Medicaid Plans to use "comparable standards" in determining Medicaid eligibility. It directs a state to make Medicaid benefits available to
 
 
 7
 "all individuals who would, except for income and resources, be eligible . . . to have paid with respect to them supplemental security income benefits . . ., and who have insufficient (as determined in accordance with comparable standards ) income and resources to meet the costs of necessary medical and remedial care and services." (Emphasis added).
 
 
 8
 Although the foregoing quoted provision is not unambiguous, HEW has in its regulations adopted the view that it does require comparable eligibility requirements for the medically needy and the categorically needy. Title 42 C.F.R. § 435.401(c), provides that a state medicaid agency
 
 
 9
 "must not use requirements for determining eligibility for optional coverage groups (such as the medically needy) that are . . . (2) For aged, blind and disabled individuals, more restrictive than those used under SSI. . . ."
 
 
 10
 Indeed, HEW has written to the states of New York, California and Michigan, which have transfer-of-assets prohibitions with respect to medicaid eligibility for the medically needy but not for the categorically needy, advising them that their policy is not in compliance with the Social Security Act.
 
 
 11
 Moreover, the courts have repeatedly recognized § 1396a(a)(10)(C)(i) as obligating states to adopt no more restrictive standards for medicaid eligibility than those governing the eligibility of other groups. In Greklek v. Toia, 565 F.2d 1259 (2d Cir. 1977), cert. denied sub nom. Blum v. Toomey, 436 U.S. 962, 98 S.Ct. 3081, 57 L.Ed.2d 1128 (1978), we invalidated a more restrictive state standard for deduction of work expenses for medically needy than for categorically needy and in Fabula v. Buck, 598 F.2d 869 (4th Cir. 1979), the Fourth Circuit held that a Maryland transfer-of-assets prohibition similar to that of New York, which applied to the medically needy, violates § 1396a(a)(10)(C)(i). But see contra, Dawson v. Beach, (C.D.Cal., May 10, 1979, Civ. 78-2350-MML). Since the argument of this appeal the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department, has held § 366(1)(e) of N.Y. Social Services Law to be violative of the Supremacy Clause by reason of its conflict with the foregoing provisions of the Social Security Act and regulations thereunder, Scarpuzza v. Blum, App.Div., 426 N.Y.S.2d 505 (2d Dept. 1980).
 
 
 12
 Plaintiffs' position is further buttressed by § 1396a(a)(17) which requires a state plan for assistance to
 
 
 13
 "(17) include reasonable standards (which shall be comparable for all groups . . .) for determining eligibility for and the extent of medical assistance under the plan which . . . (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient and (in the case of an applicant who would, except for income and resources, be eligible (to receive . . . SSI benefits i. e. the categorically needy)) as would not be disregarded . . . in determining his eligibility for such aid, assistance or benefits."
 
 
 14
 In other words, as we noted in Friedman v. Berger, 547 F.2d 724, 728 (2d Cir. 1976), cert. denied, 430 U.S. 984, 97 S.Ct. 1681, 52 L.Ed.2d 378 (1977), "for persons such as plaintiffs, who would be eligible to receive SSI benefits because of their age, blindness or disability were it not for their income, state standards must provide that income which is disregarded in determining SSI eligibility also be disregarded in determining eligibility for and the extent of medical assistance under Medicaid."
 
 
 15
 Thus plaintiffs have clearly shown a strong likelihood of success on the merits here. The State's principal defense, and one which has apparently not been raised in prior cases, is that Congress, in enacting the predecessor to § 1396a(a)(10)(C)(i) in 1965, did not intend to bar states from imposing more restrictive eligibility requirements on the medically needy than on the categorically needy.[7] Specifically, the State contends that Congress intended that the standards for medical assistance for the needy blind, aged, disabled and dependent children be comparable as between these classifications, not that the medically needy be treated comparably with the categorically needy. 42 C.F.R. § 435.401(c), the State argues, is therefore inconsistent with the statute and thus invalid. In support of this contention the State relies on a statement in the Senate and House Report, which apparently relates to § 1396a(a)(10), that the purpose of the comparability provision was to
 
 
 16
 "make more specific a provision now in the law that in determining eligibility for and the extent of aid under the plan, States must use reasonable standards consistent with the objectives of the titles. Although States may set a limitation on income and resources which individuals may hold and be eligible for aid, they must do so by maintaining a comparability among the various categorical groups of needy people. Whatever level of financial eligibility the State determines to be that which is applicable for the eligibility of the needy aged, for example, shall be comparable to that which the State sets to determine the eligibility for the needy blind and disabled; and must also have a comparability to the standards used to determine the eligibility of those who are to receive medical assistance as needy children and the parents or other relatives caring for them." S.Rep. No. 404, 89th Cong., 1st Sess. 77-78 (1965); see H.Rep. No. 213, 89th Cong., 1st Sess. 67 (1965), U.S.Code Cong. & Admin.News 1965, pp. 1943, 2018.
 
 
 17
 In 1972 Congress adopted the Supplemental Security Income program (SSI) under which the separate state programs under which the aged, blind and disabled had received assistance were combined into a federally funded assistance program with nationwide uniform eligibility requirements. Pub.L. No. 92-603 (1972), 42 U.S.C. §§ 1381, et seq. Although Congress neglected to extend medical assistance to the new SSI recipients or medically needy persons in the SSI categories, it amended § 1396a(a)(10) in 1973 to state expressly (as it now does) that states must provide medical assistance to SSI recipients. Pub.L. No. 93-233, § 13 (1973). According to the State, that amendment of § 1396a(a) (10)(C)(i) was merely technical and should not be read to require a state to treat the medically needy the same as the categorically needy, but only to treat the aged, blind and disabled medically needy comparably.
 
 
 18
 Although the State's argument is not without some force, we are not persuaded by the language of the House and Senate Reports that 42 C.F.R. § 435.401(c) should be held invalid. Nothing in the legislative history of § 1396a(a) precludes or is inconsistent with HEW's interpretation. That the aged, blind and disabled medically needy must be treated comparably as between each other does not mean that as a group (the medically needy) they should not be treated comparably with the categorically needy. HEW has promulgated a number of regulations on comparability in addition to 42 C.F.R. § 435.401(c), and the thrust of those regulations, which have been invariably upheld by the court[8] and which are based not only on § 1396a(a)(10)(C)(i) but also on the explicit language of § 1396a(a)(17), supra, is that "while a state might use more generous maintenance amounts in determining financial eligibility . . . all other SSI eligibility criteria are to be used." 42 Fed.Reg. 2685 (1977).
 
 
 19
 Considerable deference must be given to the reasonable interpretation of a statute by an agency entrusted with its administration, New York Department of Social Services v. Dublino, 413 U.S. 405, 421, 93 S.Ct. 2507, 2516, 37 L.Ed.2d 688 (1973); Friedman v. Berger, supra, and we see no reason to differ with that interpretation of the pertinent provisions of the statute here, particularly in light of the fact that the courts have invariably upheld the validity of HEW's numerous comparability provisions. We further note that Congress has recently considered several amendments to the Social Security Act which would authorize states to impose transfer-of-assets restrictions.[9] The fact that a concerned committee of Congress considers that "present law" bars transfer of assets prohibitions has some tendency to confirm HEW's interpretation of Congress' intent in its earlier enactment of comparability provisions in 1965 and amendments of them in 1973. See New York Department of Social Services v. Dublino, supra, 413 U.S. at 416 n.19, 93 S.Ct. at 2514; Banco Nacional de Cuba v. Farr, 383 F.2d 166, 175 (2d Cir. 1967), cert. denied, 390 U.S. 956, 88 S.Ct. 1038, 20 L.Ed.2d 1151 (1968).
 
 
 20
 Accordingly, we do not find persuasive the State's contention that § 366(1)(e) is complementary to and is not contrary to federal law. Decisions principally relied upon by the Commissioner are clearly distinguishable from or not inconsistent with our holding here. In New York Department of Social Services v. Dublino, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973), the Supreme Court, in considering an entirely different program under the Social Security Act (the Federal Work Incentive Program known as WIN), held that it was not intended to preempt state work programs or work rules but remanded the case to determine whether certain sections of New York's Work Rules did contravene specific provisions of the Social Security Act. In Rush v. Smith, 573 F.2d 110 (2d Cir. 1978), the plaintiffs simply failed to show any conflict between New York procedures and the Social Security Act or any intent by Congress to bar state procedures of the type in issue. The Commissioner's contention that plaintiffs here have failed to demonstrate a likelihood of success must therefore be rejected.
 
 
 21
 We likewise find no merit in appellant's argument that plaintiffs have failed to prove a sufficient threat of irreparable harm to entitle them to relief against enforcement of the New York transfer-of-assets prohibition. Those medically needy applicants who have already transferred their assets and are being denied Medicaid benefits can hardly be expected to recover those assets for use in payment of medical bills; in the meantime they would, absent relief, be exposed to the hardship of being denied essential medical benefits. The state has made no showing of hardship to it other than the requirement that pending final decision it provide Medicaid benefits to those medically needy who have transferred their excess assets. The balance of hardships therefore would tip decidedly toward plaintiffs if relief were denied.
 
 
 22
 Since the plaintiffs have satisfied the essential requirements for issuance of preliminary relief, Jackson Dairy Inc. v. H. P. Hood & Sons, 596 F.2d 70, 72 (2d Cir. 1978); Caulfield v. Board of Education, 583 F.2d 605, 610 (2d Cir. 1978); Stockwell v. Maloney, 554 F.2d 1236 (2d Cir. 1977) (denial of benefits), and no abuse of discretion on the part of the district court is shown, the order of the district court is affirmed and the stay of that order is vacated.
 
 
 
 [1]
 New York Social Services Law § 366(1)(e) provides in pertinent part:
 " § 366. Eligibility
 "1. Medical assistance shall be given under this title to a person who requires such assistance and who
 "(e) has not made a voluntary transfer of property (i) for the purpose of qualifying for such assistance, or (ii) for the purpose of defeating any current or future right to recovery of medical assistance paid, or for the purpose of qualifying for, continuing eligibility for or increasing need for medical assistance. A transfer of property made within eighteen months prior to the date of application shall be presumed to have been made for the purpose specified in subparagraph (i); a transfer of property that would be exempt from consideration under this title, made within eighteen months prior to the date of application without fair and reasonable consideration or made, without prior approval of the social services official, at any time after the application or determination of eligibility, shall be deemed to have been made for one or more of the purposes specified in subparagraph (ii) hereof. The social services official shall approve such an assignment or transfer if he determines based on the transfer agreement that the applicant or recipient will receive fair and reasonable consideration for such transfer. Such consideration shall be applied as a resource available to meet the person's medical needs as it becomes available unless all or a part of it subsequently qualifies as exempt property under subdivision two of this section."
 
 
 [2]
 Regulation 18 N.Y.C.R.R. 360.8 provides:
 "360.8 Transfer of property.
 (a) In determining eligibility for medical assistance, if a transfer or assignment of real or personal property has been made within 18 months prior to the date of application or at any time after a determination of eligibility without the prior approval of the social services official, such transfer or assignment shall be presumed to have been made for the purpose of qualifying for such assistance, or for the purpose of defeating any current or future right to recovery of medical assistance paid.
 "(b) If such transfer or assignment was made within 18 months prior to the date of application or at any time after a determination of eligibility without the prior approval of the social services official for medical assistance, the applicant shall prove to the satisfaction of the social services official that such transfer or assignment was a normal transaction not done for the purpose of qualifying for medical assistance.
 "(c) If the transfer or assignment is found to have been made for the purpose of qualifying for medical assistance, or for the purpose of defeating any current or future right to recovery of medical assistance paid, such assistance shall be denied.
 "(d) The social services official shall approve such assignment or transfer if he determines, based on the transfer agreement, that the applicant or recipient will receive fair and reasonable consideration for such transfer. Such consideration shall be applied as a resource available to meet the person's medical needs as it becomes available, unless all or part of it subsequently qualifies as exempt property under section 366.2 (366(2)) of the Social Services Law."
 
 
 [3]
 Title 42 U.S.C. § 1396a provides in pertinent part:
 " § 1396a. State plans for medical assistance Contents
 "(a) A State plan for medical assistance must
 (10) provide
 "(A) for making medical assistance available to all individuals receiving aid or assistance under any plan of the State approved under subchapter I, X, XIV, or XVI, or part A of subchapter IV of this chapter, or with respect to whom supplemental security income benefits are being paid under subchapter XVI of this chapter;
 "(B) that the medical assistance made available to any individual described in clause (A)
 (i) shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual, and
 (ii) shall not be less in amount, duration, or scope than the medical assistance made available to individuals not described in clause A; and
 "(C) if medical assistance is included for any group of individuals who are not described in clause (A) and who do not meet the income and resources requirements of the appropriate State plan, or the supplemental security income program under subchapter XVI of this chapter, as the case may be, as determined in accordance with standards prescribed by the Secretary
 (i) for making medical assistance available to all individuals who would, except for income and resources, be eligible for aid or assistance under any such State plan or to have paid with respect to them supplemental security income benefits under subchapter XVI of this chapter, and who have insufficient (as determined in accordance with comparable standards) income and resources to meet the costs of necessary medical and remedial care and services, and
 (ii) that the medical assistance made available to all individuals not described in clause (A) shall be equal in amount, duration, and scope;
 * * * "
 
 
 [4]
 Title 42 U.S.C. § 1382b(b) provides:
 "(b) The Secretary shall prescribe the period or periods of time within which, and the manner in which, various kinds of property must be disposed of in order not to be included in determining an individual's eligibility for benefits. Any portion of the individual's benefits paid for any such period shall be conditioned upon such disposal; and any benefits so paid shall (at the time of the disposal) be considered overpayments to the extent they would not have been paid had the disposal occurred at the beginning of the period for which such benefits were paid."
 
 
 [5]
 Title 42 C.F.R. § 435.120(b) provides in pertinent part:
 " § 435.120 Individuals receiving SSI.
 "Except as allowed under § 435.121, the agency must provide medicaid to aged, blind, and disabled individuals or couples who receive SSI, including
 "(b) Individuals receiving SSI under an agreement with the Social Security Administration to dispose of resources that exceed the SSI dollar limits on resources."
 
 
 [6]
 As § 366(1)(e) and 18 N.Y.C.R.R. 360.8 state, any transfer of property for less than full consideration made within 18 months prior to the filing of an application for assistance will be presumed to have been made for one of the proscribed reasons
 
 
 [7]
 The predecessor of § 1396a(a)(10)(C)(i) required those states which chose to extend aid to the medically needy to provide:
 "(i) for making medical or remedial care and services available to all individuals who would, if needy, be eligible for aid or assistance under any such State plan and who have insufficient (as determined in accordance with comparable standards) income and resources to meet the costs of necessary medical or remedial care and services, . . . ." Pub.L.No. 89-97 § 1902(a)(10) (B)(i).
 
 
 [8]
 See, for example, Greklek v. Toia, supra (relying on 42 C.F.R. § 448.3(c)); Aitchison v. Berger, 404 F.Supp. 1137 (S.D.N.Y.1975), affd. without opinion, 528 F.2d 307 (2d Cir.), cert. denied, 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976) (upholding 45 C.F.R. 248.3(c)); Schaak v. Schmidt, 344 F.Supp. 99 (E.D.Wis.1971) (upholding 45 C.F.R. 248.21); and Dominquez v. Milliken, CCH Medicare and Medicaid Guide P 26,633 (W.D.Mich.1973) (upholding 45 C.F.R. 248.21). Because HEW insists on continually redesignating its regulations, we note that the predecessor to the current regulations was first proposed as 45 C.F.R. Part 248 at 38 Fed.Reg. 32216 (Nov. 13, 1974), and updated at 39 Fed.Reg. 9512 (March 11, 1974). The regulations were then codified as 42 C.F.R. Part 448, 42 Fed.Reg. 52827 (Sept. 30, 1977) and were recodified in their present form as 42 C.F.R. Part 435 at 43 Fed.Reg. 45204 (Sept. 29, 1978). The predecessor to 42 C.F.R. 435.401 is thus 45 C.F.R. 248.2(a), (b) and (c)
 
 
 [9]
 S.Rep. No. 96-471, 96th Cong., 1st Sess. 48 (1979) (to accompany H.R. 934) § 257 reads:
 "The bill permits States to deny medical assistance to any aged, blind, or disabled person (including individuals who are not 'categorically ineligible') who has given away assets in order to meet the medicaid eligibility requirements (or has 'sold' such assets for less than their fair market value).
 "Under present law, States may provide medical assistance eligibility to recipients of aid to families with dependent children (AFDC) and to recipients of supplemental security income (SSI). In the case of SSI recipients, States have the option of making all SSI recipients eligible for medicaid or of limiting eligibility to those who met the State standards under the former State programs of aid to the aged, blind, and disabled as in effect in 1972. States may deny eligibility for AFDC to persons who give away assets in order to meet the resources limits of that program and States which had such restrictions in their former programs for the aged, blind, and disabled in 1972 may continue to apply them in determining medicaid eligibility (but only if they are among the States that have elected to continue using those 1972 standards). However, States which have elected to make all SSI recipients eligible for medicaid do not have this option. In such States an individual who is on the SSI rolls must be included in the medicaid program even if he became an SSI recipient only by giving away property (or by selling it for far less than its true value).
 "Where an individual with significant assets is faced with the prospect of substantial medical expenses particularly in cases where a prolonged period of institutionalization may be needed present law may provide a strong incentive for him to give those assets away to a friend or relative so as to qualify for medicaid immediately. To the extent that this happens, the costs of the program are increased since medical expenses which could be met from the individual's assets are instead being paid for by public funds.
 "The bill would allow States the option of denying or limiting eligibility in this type of situation. If a State chooses to make use of this provision, an aged, blind, or disabled person would be considered (for purposes of medicaid eligibility) to still possess a disposed of asset for a period of 12 months if he gave it away in order to become eligible for medicaid. (In the case of an individual who sells an asset for less than its value, he will be considered for 12 months to have an asset worth the difference between the sale price and the fair market value.)
 "The gift or sale for less than value of an asset will, under the provisions of the bill, be presumed to have been for purposes of establishing medicaid eligibility unless the individual submits adequate evidence to rebut that presumption.
 "The committee intends that this authority would be administered by the States even though other elements of medicaid eligibility may be determined by the Social Security Administration under the agreements entered into pursuant to section 1634 of the Social Security Act. It is expected, however, that the Social Security Administration would agree to reasonable State requests for referral of SSI applicants to appropriate State or county agencies for determination of this additional eligibility factor.
 "The committee emphasizes that the provision is aimed at abusive situations where assets are sold for substantially less than their fair market value. It is not intended, for example, that the provision would be used to call into question the sale of a piece of land for $1,000 or $2,000 in which the sale price may fall short of the agency's estimate of fair market value by $100 or $200."
 See also S.Rep. 95-1111, 95th Cong., 2d Sess. 24 (1978) (to accompany H.R. 5285).