Sadie ROBINSON, Plaintiff,

v.

John PRATT et al., Defendants.

Civ. A. No. 79–1278–S.

United States District Court,
D. Massachusetts.

June 24, 1980.

Mark Coven, Greater Boston Elderly Legal Services, Boston, Mass., for plaintiff.

Thomas Miller, Asst. Atty. Gen., Boston, Mass., Marianne Bowler, Asst. U. S. Atty., Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

SKINNER, District Judge.

The original plaintiff, an eighty-three year old woman, sought to enjoin the appli-cation of the Massachusetts medical assistance program's "transfer of assets" provision, M.G.L.A. c. 118E § 13, 106 C.M.R. 325.060(C) (1979),[1] to her and other persons similarly situated, alleging that to the extent that it operates to deny her medical assistance benefits (Medicaid) it violates the Equal Protection Clause of the Fourteenth Amendment and is in conflict with Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* On July 10, 1979, I issued a temporary restraining order which prevented defendant Pratt from denying Medicaid benefits to the plaintiff on the basis of this provision. Plaintiff amended her complaint to add the Secretary of Health and Human Services and seeks to compel her to enforce her Department's regulations with respect to the Massachusetts provision. 42 U.S.C. §§ 1396a(b), 1396a(c) (1976). Jurisdiction is predicated on 28 U.S. §§ 1331, 2201–2202 (1976), and the case is currently before me on plaintiff's motions for summary judgment, Fed.R.Civ.P. 56, and class certification, Fed.R.Civ.P. 23(b)(2). The Secretary has moved to dismiss pursuant to Fed.R. Civ.P. 12(b)(6).

The case of the original plaintiff is now moot. The transfer of assets which disqualified her under the Massachusetts rule occurred on April 20, 1979. The disqualification expired on April 20, 1980. Accordingly, the case as to Sadie Robinson is DISMISSED as moot. Similarly, the intervenors John N. Brown and Jane Brown were denied eligibility because of a purchase of an automobile (an exempt item) on May 22, 1979. Their claim must also be DISMISSED as moot. 106 C.M.R. 325.060(C) (1979).

The transfer said to disqualify the intervenor George Sweeney, however, occurred on December 3, 1979, and he is still disqualified from receiving Medicaid. Mr. Sweeney's case not only represents a harsh application of the rule, but also dramatically

---

1. The regulation provides:

*Transfer of Real or Personal Property*
MA (Medical Assistance) shall not be granted to an applicant who, at any time within one year immediately prior to the filing of an application for MA, has made an assignment or transfer of real or personal property so as to render himself eligible for such assistance. Plaintiff's challenge applies both to the regulation and its statutory counterpart.

demonstrates the unequal treatment of which the plaintiff complains. The disqualifying payment was made from their joint account by plaintiff's wife, without the knowledge of the plaintiff, who is suffering from senile dementia. It disqualifies the plaintiff from receiving Medicaid but does not disqualify Mrs. Sweeney from receiving Supplementary Security Income (SSI). He seeks a temporary restraining order preventing the defendant from withholding Medicaid because of his alleged "transfer of assets".

Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* (1976), provides the framework for a comprehensive cooperative federal-state medical assistance program. A state initially becomes eligible for federal funds upon submission of a medical assistance benefits plan which fulfills the requirements of the statute, 42 U.S.C. § 1396a(a) (1976), and receives the approval of the Secretary. 42 U.S.C. § 1396a(b) (1976).

Once a state decides to participate in the Medicaid program it may tailor its particular plan to its own resources and needs within federally defined limits. For example, the Title XIX state plan must make Medicaid benefits available to all individuals who are aged, blind, or disabled, the so-called "categorically needy", 42 U.S.C. § 1396a(a)(10)(A) (1976); 42 C.F.R. § 435.4 (1979). The state may, however, define the categorically needy to include all persons who receive SSI, 42 U.S.C. § 1396a(a)(10)(A) (1976), or it may use more restrictive eligibility conditions. 42 C.F.R. § 435.121 (1979). If the state elects this latter option, its requirements may be no more restrictive than those in effect under the state's Medicaid plan on January 1, 1972 and, in determining an individual's financial eligibility, the state must deduct any SSI payments received by that individual. 42 C.F.R. § 435.121(b)(1)(2) (1979).

In addition to the mandatory coverage of the categorically needy individuals, states may extend Medicaid to other groups of individuals who would otherwise be eligible for Medicaid benefits but whose income and resources are above the limits for the categorically needy; within the context of this case, these individuals comprise the "medically needy" group. 42 U.S.C. § 1396a(a)(10)(C) (1976); 42 C.F.R. § 435.4 (1979). If the state desires to extend benefits to "medically needy" individuals its administering agency "must not use requirements for determining [medically needy] groups that are . . . for the aged, blind, and disabled individuals, more restrictive than those used under SSI, except for individuals receiving an optional state supplement . . . or individuals [subject to the more restrictive requirements] as allowed by 42 C.F.R. § 435.121." [2]

Massachusetts has elected to participate in the Medicaid program and to extend coverage to the medically needy as well as categorically needy groups. M.G.L.A. c. 118E § 1 (1979). In providing Medicaid coverage for the aged, blind, and disabled, Massachusetts has chosen to make all SSI recipients automatically eligible for benefits (the "categorically needy"), and to extend benefits to others who would otherwise be eligible for benefits "but for income and resources, provided they meet the requirements of financial eligibility . . ." as set forth in the statute. One such requirement is the "transfer of assets" provision. M.G.L.A. c. 118E § 13 (1973); 106 C.M.R. 325.060(C) (1979).

Plaintiff contends, *inter alia*, that the Massachusetts transfer of assets rule is in conflict with Title XIX and the applicable HHS regulations in that it creates additional eligibility requirements not authorized by the Medicaid statutory scheme. The Act requires states which have chosen to include groups other than categorically needy groups, to make benefits available to individuals who would, except for their income and resources be eligible for SSI benefits and who have insufficient income and re-

---

**2.** Because of the manner in which Massachusetts has chosen to determine eligibility and administer its optional state supplement plan, these latter two exceptions do not apply to the Massachusetts plan.

sources for covered medical care. Insufficiency of income must be determined in accordance with standards which are "comparable" to the standards used in determining eligibility for SSI. 42 U.S.C. § 1396a(a)(10)(C)(i) (1976).

Plaintiff argues that a transfer of assets would not preclude him from SSI benefits, *Social Security Administration's Claims Manual* § 12507(a), and that Massachusetts' use of it to render him ineligible for Medicaid is in violation of the statute. Defendant argues that the transfer of assets provision serves the justifiable state purpose of preventing individuals from fraudulently obtaining Medicaid benefits and guarding the scarce welfare resources of the Commonwealth. Alternately, defendant argues that the provision be treated as a collateral restriction designed to police fraud.

I may not consider plaintiff's claim under the statute and regulations in the absence of a non-frivolous constitutional claim under the Equal Protection Clause of the Fourteenth Amendment. *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). While I am not now as sanguine as I was on July 10, 1979 about the plaintiff's likelihood of success on the merits, I conclude that his constitutional claim is genuine, colorable, and not frivolous. I must proceed to consideration of the statutory claims before reaching the constitutional one. *Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).

The Courts of Appeal of the Second and Fourth Circuits have held that disqualification from Medicaid by reason of a prior transfer of assets is in conflict with the federal statutes and regulations referred to above. *Caldwell v. Blum,* 621 F.2d 491, (2d Cir. 1980); *Fabula v. Buck,* 598 F.2d 869 (4th Cir. 1979). *Accord, Buckner v. Maher,* 424 F.Supp. 366 (D.Conn. 1976), *aff'd* 434 U.S. 898, 98 S.Ct. 290, 54 L.Ed.2d 184 (1977).

The Court of Appeals for the Ninth Circuit has taken a contrary view, holding that imposing the transfer of assets disqualification on Medicaid applicants does not violate the statutes, because the mandate to employ "comparable" standards of income does not mean "the same" standards. *Dawson v. Myers,* 622 F.2d 1304 (9th Cir. 1980).[3]

I adopt the reasoning of Judge Mansfield in *Caldwell v. Blum, supra,* and hold that the disqualification from Medicaid by reason of a prior transfer of assets violates the comparability provision of 42 U.S.C. § 1396a(a)(10)(C) (1976) and the attendant regulation, 42 C.F.R. § 435.401(c) (1979).

The next question concerns the function of the courts in administering and enforcing these provisions, a problem not addressed by any of the courts cited above. 42 U.S.C. § 1396c grants enforcement powers to the Secretary of HHS:

§ 1396c. *Operation of State plans*

If the Secretary, after reasonable notice and opportunity for hearing to the State agency administering or supervising the administration of the State plan approved under this subchapter, finds—

(1) that the plan has been so changed that it no longer complies with the provisions of section 1396a of this title; or

(2) that in the administration of the plan there is a failure to comply substantially with any such provision;

the Secretary shall notify such State agency that further payments will not be made to the State (*or, in his discretion, that payments will be limited to categories under or parts of the State plan not affected by such failure*), un-

---

**3.** In the District Court, Judge Lucas held that the no-transfer rule was not a standard of eligibility, but a collateral restriction designed to police fraud. The Court of Appeals rejected this view. If the transfer of assets was clearly keyed to a fraudulent intent by the terms of the regulation, I have no doubt that it could be sustained as a collateral restriction, but the Massachusetts' regulation is not so restricted. D.C. Central Dist. Cal., No. 78 2350, *sub nom. Dawson v. Beach.*

til the Secretary is satisfied that there will no longer be any such failure to comply. Until he is so satisfied he shall make no further payments to such State (*or shall limit payments to categories under or parts of the State plan not affected by such failure*). [Emphasis supplied].

It appears from the opinion in *Dawson v. Myers, supra,* that several regional administrators of HHS have expressed disapproval of no-transfer rules in letters to state welfare departments. In her brief in this case, the Secretary informs me that she has informed the Massachusetts Department of Welfare that it is not in compliance with federal law because of the no-transfer rule. She says, however, that imposition of sanctions under § 1396c is discretionary so that there is no basis for the issuance of a writ of mandamus against her. The emphasized language in parentheses in the quoted provision bears out this contention. I agree that a writ of mandamus against the Secretary should not be issued.

The Secretary goes farther, however, and suggests that the court has some power to grant more effective relief and to save her from the pain of decisionmaking. In her brief she asserts the following:

The drastic sanction of withholding Federal payments under 42 U.S.C. 1396c also is an indirect sanction. The Secretary withholds further payments "until the Secretary is satisfied that there will no longer be any such failure to comply". The Secretary cannot compel compliance. If this Court is so inclined, it can give plaintiff the relief she seeks by issuing an order directly against the State defendant; and this would be a far more appropriate means of removing the challenged transfer-of-property restriction from the Massachusetts Medicaid program.

\* \* \* \* \* \*

Plaintiff has no standing to invoke this Federal provision before this Court, and the relief requested with respect to the Secretary would not achieve the desired change in State policy. (*Such a change could be obtained far more easily by an order of this Court directly against State officials.*) [Emphasis supplied].
Memorandum of Defendant Harris in Support of Motion to Dismiss at 10.

I am at a loss to discover what remedy the Secretary thinks the court can impose other than offering the state the option of complying or losing the benefit of federal participation. That is precisely what the Secretary is authorized to do. It is clear, furthermore, that the Congress intended the imposition of sanctions, the form of sanctions and relief from sanctions to be committed to the discretion of the Secretary.

■ It is equally clear that compliance with 42 U.S.C. § 1396a(a)(10)(C) (1976) is not mandated as a rule of law to be enforced by the courts, but is mandated only as a condition of federal participation in a Medicaid program. *Benton v. Rhodes,* 586 F.2d 1 (6th Cir. 1978).

The enforcement of this statute has not been committed to the courts to be executed through private right of action. Such judicial enforcement would interfere with the discretion expressly vested in the Secretary. I perceive her invitation to the court to intervene as a total distortion of the statutory scheme and as an attempt to avoid a thorny political decision, *i. e.,* an abdication of responsibility.

There is much pressure on our courts to find a remedy for every wrong, to fill vacuums in political and executive leadership. The temptation to intervene is strong. To do so, however, is only to encourage further abdication.

If the Secretary had forthrightly said that she was staying her hand in the exercise of executive discretion, and urged this court to back off, I would have no quarrel with her. I take issue with her attempt to get the court to do a disagreeable part of her job in disregard of the functional structure of the applicable statute.

In my opinion, the statute does not create a private right of enforcement or authorize the interference by the court in the executive discretion of the Secretary to adminis-

ter sanctions created by § 1396c. Accordingly, I decline to enter any injunction or restraining order based on the federal statute or regulations. The plaintiff's motion for a temporary restraining order is DENIED.

The constitutional issues have not been briefed or argued, however, and I shall retain jurisdiction of the case for the purpose of resolving the constitutional issues raised by the intervenor's complaint.

## SUPPLEMENTARY MEMORANDUM AFTER RECONSIDERATION

The day that I entered my order in the above matter, the Supreme Court decided *Maine v. Thiboutot,* —— U.S. ——, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Thereafter the plaintiff and the Secretary of Health and Human Services filed a motion for reconsideration. Upon reconsideration, I do not believe that *Maine v. Thiboutot* affects the ultimate conclusion, although it clearly holds that 42 U.S.C. § 1983 allows private actions for relief from deprivation of federal statutory rights under color of state law. It is clear, however, that under the cited case and *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), 42 U.S.C. § 1983 is procedural only and does not create new substantive rights.

The issue here is whether there is a substantive remedy for the violation by Massachusetts of the federal statute. I held previously that the Congressional selection of the Secretary of Health and Human Services as the enforcement officer precluded judicial intervention. The plaintiff's motion has prompted me to review this position, even though not addressed by the Court in *Maine v. Thiboutot,* because it runs counter to the holding in *Rosado v. Wyman,* 397 U.S. 397, 420–423, 90 S.Ct. 1207, 1221, 25 L.Ed.2d 442 (1970).

In *Rosado v. Wyman,* it was held that commitment of enforcement to the Secretary does not deprive the federal courts of power to afford "effective judicial review to those individuals most directly affected by the administration of [the] program."

The more we exercise that power, however, the more we encourage the responsible public officials to default in their obligations.

■ The foregoing reflections have led me to reconsider the Secretary's assertion that her determinations under 42 U.S.C. § 1396c are purely discretionary and not subject to an order in the nature of a writ of mandamus. Closer examination of the statute reveals that the discretionary element exists only in the extent of the sanction to be applied, *i. e.,* withholding all payments under the plan or limiting the withholding of funds to that part of the state plan which is not in compliance. Once she makes a determination, as she apparently has, that a part of the state plan is not in compliance, then § 1396c requires her to take some action.

In my earlier opinion, I concentrated on the Massachusetts regulation. The Massachusetts statute contains slightly different language, to wit:

> Medical assistance shall not be granted to an applicant who, at any time within one year immediately prior to the filing of an application for medical assistance, has made an assignment or transfer of real or personal property *for the purpose* of rendering himself eligible for such assistance.

[Emphasis supplied]

As mentioned in Footnote 3 of my prior opinion, a regulation which clearly keyed the transfer of assets to a fraudulent intent might be sustained as a collateral restriction designed to police fraud, as opposed to a standard of eligibility. The statute is subject to that interpretation and, in my opinion, a regulation clearly and explicitly keyed to fraud would carry out the intent of the statute and also comply with the standards of eligibility contained in federal law.

These ruminations bring me back to the central question in the case, namely, what remedy is appropriate?

■■ The Secretary's brief in support of her motion for reconsideration goes on at length about the trouble and difficulty she

would face if forced to carry out the mandate of Congress. This is a complaint she should carry to Congress. She further asserts that this court has some general equitable power to correct deficiencies in the administration of the Medicaid Program. She refers to individual complaints, and with respect to those, the court may indeed order compliance. In the present case, however, the problem is with the structure of the plan itself as it applies to every Medicaid application. The court may not order the state to pay the benefits except as a condition of the receipt of federal contribution to the cost of the program. *Benton v. Rhodes*, 586 F.2d 1 (6th Cir. 1978).

The combined message of *Rosado v. Wyman, supra*, and *Maine v. Thiboutot, supra*, however, is that a plaintiff seeking enforcement of federal rights against a state is not to be abandoned by federal courts if any reasonable remedy can be fashioned.

The conclusion that I reach from the foregoing is that the Secretary should be forced to do her duty as commanded by 42 U.S.C. § 1396c. Since it appears from her brief that she has already reached a conclusion concerning the propriety of the Massachusetts regulation, and that conclusion is in accord with the views of this court and several courts of appeal, as outlined in my June 24, 1980 order, preliminary relief is appropriate.

Accordingly, a preliminary injunction shall be entered herein in the form of an order to the Secretary requiring her (1) forthwith to commence proceedings under 42 U.S.C. § 1396c and (2) until such proceedings are completed to withhold from the Commonwealth of Massachusetts all contribution for Medicaid payments to persons other than SSI recipients unless within thirty days of the entry of this order the defendant Commissioner amends his regulation so that the transfer of assets disqualification shall apply only upon a specific finding that the transfer of assets was made with a fraudulent intent on the part of the applicant himself.

This order shall remain in force until such time as the Secretary, after notice and hearing, shall take some other action in accordance with 42 U.S.C. § 1396c, in which case such action shall supersede the order of the court. If the Commissioner amends his order in the manner described above, the Secretary may apply for a modification of this order.