**PHOENIX BAPTIST HOSPITAL AND MEDICAL CENTER et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV–87–1524–PHX–RGS.**

United States District Court, D. Arizona.

Dec. 21, 1989.

**1424**

Cameron Charles Artigue, Richard B. Burnham, Phoenix, Ariz., for plaintiff.

Sally Rider, for defendant.

## ORDER

STRAND, District Judge.

## I. INTRODUCTION

This action arises out of the implementation of the Arizona Health Care Cost Containment System ("AHCCCS"), Arizona's experimental alternative to traditional medicaid. Plaintiffs are corporations that have provided and continue to provide health care goods and services in Arizona. This action was filed in federal court pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2674 and § 1346(b). The defendant in this action is the United States of America.

The gravamen of the plaintiff's second amended complaint is that the Secretary of the Department of Health and Human Services, and other department employees, were negligent in fulfilling their legal duty to oversee the administration of AHCCCS so as to ensure the state program's substantial compliance with applicable federal statutes and regulations. The complaint alleges that the defendant's acts and omissions injured plaintiffs by causing a situation whereby plaintiffs provided necessary medical goods and services without compensation.

Prior to October 1, 1982, Arizona received no federal funding for indigent health care. Arizona law placed the sole responsibility for providing such care on Arizona counties. Ariz.Rev.Stat.Ann. § 11–291, *amended by* Ariz.Rev.Stat.Ann. § 11–291 (1989). In order to receive federal medicaid funds authorized by Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, Arizona implemented AHCCCS in 1982 as an experimental, federally funded Title XIX program. The State had to obtain the approval of the Secretary of the Department of Health and Human Services (the "Secretary") and had to comply with the continuing requirements of Title XIX. Arizona declined to follow the traditional Title XIX "fee-for-service" model under which a state's Medicaid agency reimburses providers directly for each medical service rendered. Instead, the government hoped to realize per-member cost savings by instituting a "prepaid capitated" system in which "prime contractors" receive a designated sum each month for each indigent person assigned to that contractor's program or "plan." In exchange, the contractor must provide, or purchase, all medical care needed by its members.

This system of reimbursement represented a fundamental departure from the traditional Medicaid model and radically shifted the risks associated with the treatment of indigents. Under Medicaid, a hospital knows that it will receive reimbursement directly from the government, through its state Medicaid agency. Payment may be at a discounted rate, but the hospital enjoys the assurance that payment is due directly from a governmental payor. In contrast, under AHCCCS, the government passes the funds to private, capitated "prime contractors" and the hospitals must look to these "middle men" for payment.

AHCCCS provides medical assistance to low income residents who are otherwise

unqualified to receive such assistance. *See* 42 C.F.R. 430.0 (1988). Under Title XIX of the Social Security Act, each state decides eligible groups, range of services, and administrative and operating procedures. *Id.* The state directly pays the health service providers for furnished services and the federal government partially reimburses the state program according to the formula specified in 42 U.S.C. § 1396b.

In administering the AHCCCS program, the State of Arizona entered into agreements with four "prime contractors" which were to provide for medical care and services to AHCCCS qualified patients. Of the four prime contractors at issue here, three of them have gone into bankruptcy. These are Arizona Physicians, IPA, Inc.; Health Care Providers of Arizona, Inc.; and Western Sun Associates, Inc. The fourth, El Rio Neighborhood Health Center, Inc., became insolvent and subsequently assigned its AHCCCS prime contract to another party, leaving the plaintiffs unpaid.

The plaintiffs in this action are unsecured creditors of one or more of the prime contractors. Plaintiffs allege that because of the contractors' insolvency, they have provided, without reimbursement, over $35,000,000 in medical goods and services to AHCCCS patients enrolled with those prime contractors. Plaintiffs claim that defendant United States of America is liable for their damages because it negligently supervised, audited, investigated and continued funding the AHCCCS demonstration project.

Plaintiffs filed their initial complaint on September 24, 1987, and their first amended complaint on October 14, 1987. On December 31, 1987, defendants filed a motion to dismiss plaintiffs first amended complaint for lack of jurisdiction. On March 7, 1988, the court heard argument on defendant's motion for a protective order. The court declined to issue a protective order and provided that two depositions could be taken as requested by the plaintiffs. These depositions were subsequently filed with the court.

On April 11, 1988, the court heard oral argument on defendant's motion to dismiss the first amended complaint, and the court allowed both parties to submit supplemental memoranda. On May 19, 1988, plaintiffs filed a second amended complaint, and on May 26, 1988, defendant filed a motion to dismiss this complaint. On July 18, 1988, the court heard arguments on defendant's motion to dismiss. Additional memoranda were submitted by both parties. On December 6, 1988, plaintiffs filed a motion to voluntarily dismiss class action allegations of their second amended complaint. The court granted this motion without prejudice.

Having reviewed and considered the plaintiffs' second amended complaint, the defendant's motion to dismiss, plaintiffs' response, defendant's reply, supplemental memoranda, and pertinent legal authority, the court now renders its decision.

## II. ANALYSIS

### A. *Relevant Statutory Provisions*

Title 42 § 1396a(a) sets out the requirements with which traditional state medicaid plans must comply. Section 1396a(b) governs the Secretary of HHS's approval of plans which fulfill the requirements of section 1396a(a). The formula by which federal payments are made to the states is set out in section 1396b. Section 1396c addresses the Secretary's authority upon determining that a state plan fails to comply with section 1396a. Section 1396c provides that:

If the Secretary, after reasonable notice and opportunity for hearing to the State agency administering or supervising the administration of the State plan approved under this subchapter finds—

(1) that the plan has been so changed that it no longer complies with the provisions of section 1396a of this title; or

(2) that in the administration of the plan there is a failure to comply substantially with any such provision;

the Secretary shall notify the State agency that further payments will not be made to the State (or, in his discretion, that payments will be limited to categories under or parts of the State plan not

affected by such failure), until the Secretary is satisfied that there will no longer be any such failure to comply. Until he is so satisfied he shall make no further payments to such State (or shall limit payments to categories under or parts of the State plan not affected by such failure).

Title 42 § 1396c.

■ This section gives the Secretary discretion regarding whether to hold a compliance hearing,[1] but once the Secretary finds that a state program has failed to comply with the terms of section 1396a, he must take some action. *Robinson v. Pratt,* 497 F.Supp. 116 (D.C.Mass.1980). The statute also grants the Secretary discretion to determine when the state comes back into compliance.

Because the AHCCCS program was approved as a demonstration project under 42 U.S.C. § 1315, the court does not need to determine the extent of the Secretary's discretion under section 1396c. Section 1315 authorizes the Secretary to approve demonstration programs, and in doing so he may "waive compliance with any of the requirements of section … 1396a … to the extent and for the period he finds necessary to enable such State or States to carry out such project...." 42 U.S.C. § 1315(a)(1). Because section 1396a specifies the statutory requirements state plans must meet to be approved by the Secretary, the Secretary's authority to waive compliance for so long as "he finds necessary" is a broad grant of discretion.

#### B. *The Discretionary Function Exception to the Federal Tort Claims Act*

The Federal Tort Claims Act (FTCA),[2] the jurisdictional basis alleged by the plaintiffs, "is a limited waiver of sovereign immunity making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment."

*United States v. Orleans,* 425 U.S. 807, 814, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976). This waiver of sovereign immunity is limited by the exceptions set forth in 28 U.S.C. § 2680. If a case falls within any of these exceptions, the court lacks subject matter jurisdiction and the case must be dismissed. *See Orleans,* 425 U.S. at 814, 96 S.Ct. at 1976; *Dalehite v. United States,* 346 U.S. 15, 31, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953) ("[P]etitioners obtain their 'right to sue from Congress [and they] necessarily must take [that right] subject to such restrictions as have been imposed.'") (brackets in original) (quoting *Federal Housing Administration v. Burr,* 309 U.S. 242, 251, 60 S.Ct. 488, 493, 84 L.Ed. 724 (1940)).

The "discretionary function exception" is set forth in 28 U.S.C. § 2680(a). This section provides that the waiver of sovereign immunity under the FTCA, 28 U.S.C. § 2674, and the jurisdictional grant to the district courts in 28 U.S.C. § 1346(b) does not apply to:

> (a) Any claim … based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

Plaintiffs allege that their claims arise from the negligence of the Department of Health and Human Services (HHS) in monitoring and enforcing compliance with the provisions of 42 U.S.C. §§ 1396a and 1396c. Within HHS, the Health Care Financing Administration (HCFA) is responsible for developing program policies, setting standards, and monitoring compliance with federal medicaid legislation and regulations. The Supreme Court observed in *Dalehite* that "[i]t is clear that the … clause [in the discretionary function exception] as to

---

**1.** *Arthur C. Logan Mem. Hosp. v. Toia,* 441 F.Supp. 26, 27 (S.D.N.Y.1977) ("Under the medicaid statute, it is within the discretion of the Secretary to hold a compliance hearing pursuant to 42 U.S.C. § 1396c.").

**2.** 28 U.S.C. § 2674 provides in part: "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances...."

abuse connotes both negligence and wrongful acts in the exercise of the discretion.... The exercise of discretion could not be abused without negligence or wrongful act." *Dalehite*, 346 U.S. at 33, 73 S.Ct. at 966; *see also Mitchell v. United States*, 787 F.2d 466, 468 (9th Cir.1986) *cert. denied*, 484 U.S. 856, 108 S.Ct. 163, 98 L.Ed.2d 118 (1987) ("Negligence ... is irrelevant to the discretionary function issue."). Thus, the dispositive issue in this case is whether the plaintiffs' claims are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of HHS." 28 U.S.C. § 2680(a). The determination of whether a particular activity is a discretionary function is a question of law. *Garcia v. United States*, 826 F.2d 806 (9th Cir.1987).

1. *Judicial Interpretation of Discretionary Function Exception*

The United States Supreme Court first addressed the discretionary function exception to the FTCA in *Dalehite v. United States*, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). The Court discussed the legislative history of the FTCA, observing that "it was not contemplated that the Government should be subject to liability arising from acts of a governmental nature or function.... Uppermost in the collective mind of Congress were the ordinary common-law torts ... [such as] 'negligence in the operation of vehicles.' " *Id.* at 28, 73 S.Ct. at 964. In addressing the discretionary function exception, the Court stated that discretion exists when there is "room for policy judgment and decision.... It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directives cannot be actionable." *Id.* at 36, 73 S.Ct. at 968.

The Supreme Court affirmed its *Dalehite* interpretation of the discretionary function exception in *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). In *Varig Airlines*, the Court emphasized that the nature of the government actor's conduct in the particular case rather than the person's position, determines whether the discretionary function exception applies. 467 U.S. at 813, 104 S.Ct. at 2764. The Court stated that "Congress wished to prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 815, 104 S.Ct. at 2765.

Plaintiffs argue that *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), is dispositive of the discretionary function issue in the case at bar. In *Berkovitz*, the plaintiff filed a FTCA claim alleging violation of federal law and policy by government agencies charged with licensing and regulating medical laboratories that produced and distributed polio vaccine. The Supreme Court held that the discretionary function exception does not bar a claim under the FTCA "when a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow." *Berkovitz*, 108 S.Ct. at 1958. "The discretionary function exception applies only to conduct that involves the permissible exercise of policy judgment." *Id.* at 1960. The Court reasoned that the government agencies charged with licensing and regulating laboratories producing polio vaccine had no discretion to exercise, and thus did not fall under the discretionary function exception. *Id.* at 1962.

■ The Court in *Berkovitz* specified that it granted certiorari "to resolve a conflict in the Circuits regarding the effect of the discretionary function exception on claims arising from the Government's regulation of polio vaccines." *Id.* at 1958. The plaintiff's suit in *Berkovitz* alleged that the government violated specific *mandatory* statutory and regulatory provisions. The specific mandatory licensing regulations at issue in *Berkovitz* differ, however, from the statutes and regulations governing HHS's regulation of an experimental alternative state health care program. The statute authorizing the Secretary of HHS to waive the state plan requirements of 42 U.S.C. § 1396a for demonstration projects

is a specific, broad grant of discretion. 42 U.S.C. § 1315; *see California Welfare Rights Org. v. Richardson*, 348 F.Supp. 491, 497 (N.D.Cal.1972).

The Secretary's decision to waive requirements involves a policy decision to allow a state the opportunity to develop its own alternative to traditional medicaid programs which can provide information helpful to furthering the objectives of the Medicaid program. *California Welfare Rights Org.*, 348 F.Supp. at 497 ("[T]he experimental project which 'fails' may well assist in promoting the objectives [of the Social Security Act] precisely by demonstrating what will not work, and what should therefore, be avoided in formulating the requirements for state plans.").

■ Upon accepting AHCCCS as a demonstration project under 42 U.S.C. § 1315, the Secretary's discretion to waive "any of the requirements of section ... 1396a" was established. Once his discretion is established, it is irrelevant to the discretionary function analysis whether a conscious waiver decision was made regarding any specific state plan requirement. *See In re Consolidated United States Atmospheric Testing Litigation v. Livermore Labs*, 820 F.2d 982, 998 (9th Cir.1987). *In re Consolidated* stated that "[i]f the decision [to act] is within the discretionary function exception, then logically the failure to consider whether ... [to act] necessarily falls within the exception as well." *Id.* at 998–99.[3] Otherwise, the problem of determining what constitutes a "decision" arises. *Id.* at 999. For example, "[w]ould a decision to defer decision be a 'decision?'" *Id.* The language of the discretionary function exception "is directed at the nature of the conduct, and does not require an analysis of the decision making process." *Id.* at 998. Once the Secretary accepted the AHCCCS program as a demonstration project, the broad grant of discretion in 42 U.S.C. § 1315 transforms enforcement of

section 1396a state plan requirements into a discretionary function.

Acts of subordinates who are implementing the policies of government are insulated from tort claims under the discretionary function exception. *In re Consolidated*, 820 F.2d at 993 (citing *Dalehite*, 346 U.S. at 34–36, 73 S.Ct. at 967–968); *see also Begay v. United States*, 768 F.2d 1059 (9th Cir. 1985) (subordinates implementing a Public Health Service decision not to warn of radiation danger was within the scope of the exception).

Plaintiffs' reliance on federal regulations[4] imposing duties on states with traditional Medicaid programs fails for two reasons. First, these requirements are the same that the Secretary may, in his discretion, waive for an experimental program such as AHCCCS. Second, regulations that are binding upon those being regulated by the federal government impose no mandatory duty upon the government. *See Varig Airlines*, 467 U.S. at 815–17, 104 S.Ct. at 2765–66. The regulations impose obligations on the states and warn that federal funding is not available if the states fail to comply. The Secretary's power to withdraw funding, however, is authorized by 42 U.S.C. § 1396c which provides the Secretary with discretion. The Secretary is required to withdraw federal funds *if*, he has made a formal finding of noncompliance. 42 U.S.C. § 1396c. There is no provision for terminating federal funding in the absence of such a finding.

■ Federal procurement regulations found at Title 48 of the Code of Federal Regulations are inapplicable to AHCCCS contracts because federal procurement regulations apply to *federal* contracts. The contracts between the State of Arizona and prepaid health plans, or between the health plans and the ultimate providers, were not federal contracts.

■ Plaintiffs cited a number of cases in support of their assertion that the Secre-

---

**3.** The Ninth Circuit adopted most of its opinion, including this segment, from the district court's opinion in *In re Consolidated United States Atmospheric Testing Litigation v. Livermore Labs*, 616 F.Supp. 759 (N.D.Cal.1985).

**4.** 42 C.F.R. Part 455.

tary has a duty to monitor state medicaid plans after initial approval.[5] However, these cases stand for the proposition that even after the initial approval of a state Medicaid plan, the Secretary *retains authority* to determine whether the plan remains in compliance with federal regulations. Most of the cases cited by plaintiffs involved challenges to the Secretary's authority under the Social Security Act.[6] None of these cases involved a demonstration project such as AHCCCS. More importantly, none of these involved a claim for damages under the Federal Tort Claims Act.

## III. CONCLUSION

For the foregoing reasons, the court holds that the actions of HHS in regulating the AHCCCS demonstration project are insulated from the plaintiffs' FTCA claims by the discretionary function exception of 28 U.S.C. § 2680(a). Therefore, the court does not have subject matter jurisdiction over this action and the complaint must be dismissed.

The court does not reach the other jurisdictional issue raised by the government, the misrepresentation exception to the FTCA found in 28 U.S.C. § 2680(h). Also, the court does not reach the issue of whether plaintiffs claim established an actionable duty under the FTCA.

IT IS ORDERED dismissing plaintiffs second amended complaint.

---

**5.** *State of Washington v. Bowen,* 815 F.2d 549 (9th Cir.1987); *Illinois Council on Long Term Care v. Miller,* 579 F.Supp. 1140 (N.D.Ill.1983); *Charleston Mem. Hosp. v. Conrad,* 693 F.2d 324 (4th Cir.1982); *Arizona State Dep't of Public Welfare v. Dep't of HEW,* 449 F.2d 456 (9th Cir.1971).

**6.** *State of Washington,* 815 F.2d 549; *Charleston Mem. Hosp.,* 693 F.2d 324; *Connecticut State Dep't of Public Welfare,* 449 F.2d 456; *Arizona State Dep't of Public Welfare,* 449 F.2d 456.