**Christina CHISHOLM, et al.,
On Behalf of Themselves &
Others Similarly Situated,**

v.

**David HOOD, Secretary, La. Dept.
of Health & Hospitals.**

No. Civ.A. 97–3274.

United States District Court,
E.D. Louisiana.

Feb. 21, 2001.

Sarah Hall Voigt, Advocacy Center, New Orleans, LA, Ellen Bentley Hahn, Advocacy Center for the Elderly & Disabled, Lafayette, LA, David Holman Williams, Peller & Williams, New Orleans, LA, Jane Perkins, National Health Law Program, Chapel Hill, NC, for plaintiffs.

Lou Ann Owen, Charles E. Daspit, Stephen Robert Russo, Department of Health & Hospitals, Baton Rouge, LA, for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

BARBIER, District Judge.

In October 1997, Plaintiffs filed this suit under 42 U.S.C. § 1983 against defendant, the Louisiana Department of Health and Hospitals, alleging numerous medicaid vio-

lations. Plaintiffs have been certified as a class of

> All current and future recipients of Medicaid under the age of twenty-one who are now and will in the future be placed on the Mental Retardation/Developmental Disabilities ("MR/DD") Waiver waiting list.[1] *Chisholm v. Jindal,* No. 97–3274, 1998 WL 92272 (E.D.La. Mar.02, 1998) (Duval, J.).

Since filing suit, the parties have entered into two partial settlements which resolved some of Plaintiffs' claims. On February 16, 2000, and December 14, 2000, the Court conducted fairness hearings and approved those partial settlements. In addition, on August 30, 2000, the Court entered partial summary judgment for Plaintiffs on some of their claims, and reserved a ruling on others until the February 16, 2000 settlement had been given a chance to resolve them.

Following the foregoing rulings, the sale issue left for trial concerned the State's obligation, under federal medicaid law, to provide community-based access to psychological and behavioral services to class members diagnosed with autism. This remaining issue came on for trial before the Court, sitting without a jury, on October 17, 2000. Prior to trial, the parties consented to try the sole remaining issue by submitting all evidence in documentary form. Accordingly, on October 17, 2000, the Court admitted into evidence, subject to pending objections and motions in limine, various exhibits and depositions, and then heard closing arguments. After closing arguments, the Court allowed the proof to remain open in light of Defendant's objections to several of Plaintiffs' exhibits. In response to those objections, Defendant was permitted to depose four of Plaintiffs' trial witnesses. On November 30, 2000, those depositions were filed into the record, at which time the Court took the matter, as well as the pending motions

---

1. Throughout these Findings of Fact and Conclusions of Law, the term "children" is used to refer to all class members, all of whom are under the age of twenty-one, even though those over the age of 18 are not legally minors.

in limine and other objections, under advisement.[2]

Having now considered the evidence, memoranda, arguments of counsel, and applicable law, the Court now renders its Findings of Fact and Conclusions of Law pursuant to Federal Rule of Civil Procedure 52(a).

## THE PARTIES' CONTENTIONS

The sole issue before the Court is the extent to which federal law requires the State, through the Louisiana Department of Health and Hospitals, to provide community-based behavioral and psychological services, rendered by licensed psychologists,[3] to class members diagnosed with autism.[4] Autism, which has its onset in early childhood, is a subset of a set of disorders called Pervasive Developmental Disorders. It is an often severely disabling mental disorder caused by underlying neurological deficits. 350 children who are class members, including named plaintiff Jonathan Turner, have been diagnosed with autism.

Defendant is the Secretary of the Louisiana Department of Health & Hospitals ("DHH" or "the State" or "Defendant"). DHH is the single state agency designated to administer the medicaid program within the State of Louisiana. DHH administers the Office of Mental Health ("OMH") and office for Citizens with Developmental Disabilities ("OCDD"). OCDD is responsible for programs and functions of the state pertaining to the care, training, treatment, and education of the mentally retarded, developmentally disabled, and the autistic. OMH is responsible for providing services and continuity of care for the prevention, detection, treatment, rehabilitation, and follow-up care of mental and emotional illness, and performs functions relating to mental health.

Plaintiffs argue that behavioral and psychological services are essential to treating children with autism. They also argue that licensed psychologists, as opposed to psychiatrists or other practitioners, are uniquely qualified to render those services. Accordingly, they argue that federal medicaid law mandates that the state program provide class members, diagnosed with autism, access to behavioral and psychological services administered by licensed psychologists. While recognizing that these services are not completely unavailable under the State's current system, Plaintiffs argue that the State's offerings nevertheless do not provide those services to the extent mandated by federal law. They assert that access to psychological and behavioral services via the State's current system is more theoretical than actual.

DHH does not dispute that psychological and behavioral services would benefit class members with autism. Nor does DHH take issue with Plaintiffs' contention that licensed psychologists are uniquely suited to effectively render those services. DHH does, however, dispute that its current system fails to provide class members

2. Those objections and motions in limine have been disposed of by a separate order.

3. As used throughout these Findings of Fact and Conclusions of Law, the term "psychologist" refers to an individual so licensed in Louisiana. In Louisiana, to be so licensed, the individual must possess a doctoral degree with a major in psychology, have a minimum of two years of experience practicing psychology under the supervision of a psychologist, and must pass both a written and an oral examination. See La.R.S. 37:2356.

4. In its pre-trial memorandum, filed just days before trial, the State, for the first time, raised the argument that the issue of Plaintiffs' access to services for the autistic is beyond the scope of Plaintiffs' complaint. At the October 13, 2000 status conference, the Court informed counsel that any such objection should have been raised much earlier in the proceedings given that the parties had agreed at the August 29, 2000 status conference that this issue would go to trial. Accordingly, the Court informed counsel that any objection to the scope of Plaintiffs' complaint had been implicitly waived and that the Court would either consider Plaintiffs' complaint as amended by consent or would grant Plaintiffs leave to amend. Regardless, the objection was overruled.

with sufficient access to the services at issue. In defense of its current system, DHH points to various avenues through which class members can in fact access psychological services.

## I. ARE THE SERVICES PLAINTIFFS SEEK MANDATED BY FEDERAL LAW?

■ The starting point of this analysis necessarily begins with the question of whether Plaintiffs are entitled to the services they seek. That is: Does federal medicaid law require the State to provide class members, diagnosed with autism, behavioral and psychological services rendered by a licensed psychologist? DHH does not take issue with Plaintiffs' contention that these services are essential to treating autistic children, and therefore, mandated by federal law. After reviewing the applicable law and pertinent evidence, the Court concurs for the reasons set forth below.

■ Title XIX, or "medicaid," enacted by Congress in 1965, is a jointly administered federal-state program of public assistance. A state's participation in the medicaid program is entirely voluntary. *Wilder v. Virginia Hospital Assn.*, 496 U.S. 498, 502, 110 S.Ct. 2510, 2513, 110 L.Ed.2d 455 (1990). States are free to design their medicaid programs so long as each state complies with the federal statute. Exactly how and in what fashion the state provides these services is left up to the state, *Beal v. Doe*, 432 U.S. 438, 444, 97 S.Ct. 2366, 2371, 53 L.Ed.2d 464 (1977), so long as it complies with federal law. *Mitchell v. Johnston*, 701 F.2d 337, 343 (5th Cir.1983).

Louisiana accepts over two billion dollars a year in federal funding for its medicaid program. Court's order and Reasons entered August 21, 2000, at 11. By choos-

ing to participate in the federal medicaid program and accepting these funds, the State of Louisiana obligates itself to comply with federal medicaid law. *Wilder*, 496 U.S. at 502, 110 S.Ct. at 2513.

One of the State's obligations under federal medicaid law is that its program *must* provide early and periodic screening, diagnosis, and treatment services ("EPSDT") to categorically needy individuals under age 21.[5] *See* 42 U.S.C. § 1396a(a)(10)(A) (medical assistance), 1396d(a)(4) (EPSDT). The scope of EPSDT services is defined at 42 U.S.C. § 1396d(r). According to the definition, EPSDT services include vision, hearing, and dental services as well as "screening services" aimed at determining the existence of disabilities such as autism. *See* 42 U.S.C. § 1396d(r)(1)(A)(ii). Other services, not specifically enumerated in the definition, are also mandated if those services are a type of "medical assistance," as defined in section 1396d(a), that is "necessary ... to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services...." 42 U.S.C. §§ 1396d(r)(5), 1396d(a).

All class members are categorically needy. *See* Joint Exhibit 5, ¶ 1. Therefore, as medicaid recipients under the age of 21, all class members, including those diagnosed with autism, are entitled to EPSDT services. Accordingly, if behavioral and psychological services for the autistic qualify as EPSDT services, then the State must provide them under its medicaid plan. A threshold question, however, is whether these services are "medical assistance" necessary to "correct or ameliorate" autism.

The psychological and behavior management services sought by Plaintiffs undeniably constitute "medical assistance" as defined in 42 U.S.C. § 1396d(a).

---

5. The distinction between categorically needy versus medically needy is not one based upon medical need but rather upon financial status. *See Caldwell v. Blum*, 621 F.2d 491 (2d Cir. 1980). Both groups lack sufficient resources

to pay for necessary medical care, but medically needy individuals have greater financial resources than those classified as categorically needy. *Id.; see* 42 U.S.C. § 1396a(a)(10).

These services fall within at least two of the described services, specifically:

> [A]ny other type of remedial care recognized under State law, furnished by licensed practitioners within the scope of their practice as defined by State law.

42 U.S.C. § 1396d(a)(6),

and,

> [O]ther ... preventive, and rehabilitative services, including any medical or remedial services ... recommended by a physician or other licensed practitioner of the healing arts within the scope of their practice under State law, for the maximum reduction of physical or mental disability and restoration of an individual to the best possible functional level.

42 U.S.C. § 1396d(a)(13).

Psychologists are licensed health practitioners. *See* La.R.S. 37:2351, *et seq.* As shown by the testimony of Plaintiffs' expert, psychologists' services offer remedial care to persons with autism and can be both preventive and rehabilitative. They are thus within the scope of "medical assistance" as defined in 42 U.S.C. § 1396d(a), and therefore, must be provided when needed to correct or ameliorate conditions, as required by 42 U.S.C. § 1396d(r)(5).

Based upon the evidence offered at trial, there seems to little disagreement that the services at issue are necessary to correct or ameliorate the debilitating effects of autism. On this point, Plaintiffs offered the unrebutted testimony of Dr. Grant Butterbaugh, Ph.D., a psychologist licensed by the state of Louisiana as a Clinical Psychologist and Clinical Neuropsychologist.[6] Dr. Butterbaugh also serves as an Associate Clinical Professor in the Psychiatry Department of the Louisiana State University School of Medicine in New Orleans.

According to Dr. Butterbaugh, psychological or behavioral interventions have been shown to be effective in improving functioning in children with autism. Plaintiffs' Exh. 1, ¶ 28. The use of behavioral interventions is essential for teaching most children with autism daily functional skills (functional or adaptive communication, social, motor coordination, and mental skills), and for modifying their misbehaviors. *Id.* at ¶ 24. Dr. Butterbaugh testified that the effects of autism can at least be mitigated by psychological services, and that for many individuals with autism, psychological services are a necessary service, for which other services cannot substitute.

Dr. Butterbaugh's testimony also negates the proposition that services provided through psychiatrists or other practitioners can substitute for behavioral services rendered by licensed psychologists. Plaintiffs' Exh. 1, ¶ 36. Dr. Butterbaugh testified that psychiatrists generally are not trained in, and do not provide, the types of intensive behavioral treatment methodologies that have been shown to be effective in treating children with autism. Plaintiffs' evidence establishes that psychologists are the professionals who have the most expertise in the behavioral or psychotherapeutic interventions that are necessary to correct or ameliorate the conditions associated with autism. Plaintiffs' Exh. 1, ¶ 33.

Dr. Butterbaugh's unrebutted testimony establishes that the services of psychologists are necessary to combat and avoid the often tragic effects of autism. Accordingly, these services qualify as EPSDT services, as defined by federal statute, for class members diagnosed with autism. It follows then that the State must, pursuant to the federal EPSDT mandate, provide behavioral and psychological services, rendered by licensed psychologists, to class members with autism.

---

6. The State attempted to offer the testimony of Sara Kendall, OCDD's Coordinator For Autism Services (DHH's Exh. 8) to rebut portions of Dr. Butterbaugh's testimony but the Court concluded that Ms. Kendall was not qualified to testify as to such matters.

## II. DOES LOUISIANA'S PROGRAM COMPLY WITH FEDERAL LAW?

 Having found that federal law requires the State to provide class members diagnosed with autism behavioral and psychological services, rendered by licensed psychologists, the question now is whether the State's medicaid program complies with that federal mandate. Under the State's current system, psychologists are not allowed to directly enroll in the medicaid program as providers of services. Despite this restriction, DHH asserts that its program allows class members to access the services at issue through other avenues such as its Mental Health Rehabilitation Program, Mental Health Clinics, Rural Health Clinics, public schools, and from licensed psychologists practicing through physicians' offices. As noted above, Plaintiffs do not contend that psychological services are completely unavailable under the current system. Rather, they contend that DHH's offerings are applicable in so few cases that they are, for all practical purposes, non-existent for class members.

The offerings under the State's current program are discussed below. After considering the evidence offered by both sides, the Court finds Plaintiffs' arguments on this point persuasive. Accordingly, the Court concludes that the State's current system does not comply with the mandates of federal medicaid law.

### Mental Health Rehabilitation Program and Mental Health Clinics

DHH asserts that access to psychological services is provided through the Mental Health Rehabilitation ("MHR") program and the mental health clinics.

The MHR program and mental health clinics are located within the Office of Mental Health within DHH. The MHR program allows private providers meeting certain administrative criteria to enroll in medicaid as qualified providers, and be reimbursed for the provision of an individually designed package of services. The MHR program provides mental health services to children with severe emotional/behavioral disorders.

According to Anthony Speier, Ph.D., the Director of the Division of Community Services for the Office of Mental Health within DHH, the MHR program and mental health clinics use similar eligibility criteria for determining which individuals seeking services from those facilities will be accepted as patients. One criterion common to both facilities is that the individual seeking services must have a primary diagnosis of mental illness. But under the State's criteria, autism is not classified as a mental illness. Thus, services under the MHR program and mental health clinics would not be available to children with autism unless there is also a co-existing mental illness diagnosis. Joint Exh. 6, at 4–4. At the time of Dr. Speier's deposition, only eight out of 1300 children under the age of 18 and participating in the MHR program had a diagnosis of autism. It is not known if they were class members.

Further, behavioral and psychological services are not necessarily part of the MHR offering, and when they are, those services are not necessarily provided by licensed psychologists. Similarly, the mental health clinics are not required to include psychologists on their staffs and the psychological services offered consist primarily of testing, and do not include behavior management. Counseling is generally done by social workers. Services at state mental health clinics consist primarily of medication management and are not designed to address the ongoing needs for behavioral services for children with autism. Plaintiffs' Exhs. 3, 8.[7]

---

**7.** Plaintiffs also contend that DHH's exclusion of persons diagnosed with autism from services offered at the MHR and mental health clinics violates the "sufficiency of services" provision which restricts the imposition of coverage limits that differentiate by diagnosis, type of illness, or condition. 42 C.F.R. § 440.230; *Rush v. Parham*, 625 F.2d 1150, 1156 n. 12 (5th Cir.1980). Pursuant to this provision, coverage discriminations must be

The conclusion that the MHR program and mental health clinics do little to help meet the State's obligations under federal law is supported by the experience of Bianca Woodson. Ms. Woodson's son Dimitri is a class member with autism. When she sought help for Dimitri, she was told that those facilities did not treat children with autism. Plaintiffs' Exh. 12, ¶ 5.

### Rural Health Clinics and Federally Qualified Health Clinics

DHH asserts that psychological and behavioral health services are also available to autistic class members through Rural Health Clinics ("RHC") and Federally–Qualified Health Clinics ("FQHC").

RHCs operate in essentially the same way as a physician's office. They provide acute health services and cannot be primarily engaged in providing mental health services. Many RHCs are operated out of physicians' offices. An FQHC is a clinic in a designated area that provides services to low-income individuals. FQHCs provide both acute and preventative health services. They are staffed primarily by physicians, nurse practitioners, and physician assistants.

Although the rules and regulations of the State's program allow RHCs and FQHCs to offer the services of clinical psychologists, it is not known how many of these centers actually do offer these services. Mary Norris, Health Services Financing Policy Supervisor within DHH stated that she believed that a very small percentage of RHCs and FQHCs actually offer the services of psychologists. If they did offer such services, she did not know if they offered any specialized services for children with autism, or whether children with autism are currently receiving such services through either type of facility. Joint Exh. 1, ¶ 6.[8]

### School Services

DHH contends that psychological services are available to class members through public schools. School psychological services are part of "EPSDT Health Services," and are made available in public schools and in early intervention centers (for children under 3), if they are included in the child's Individualized Education Plan ("IEP") or Individualized Family Services Plan ("IFSP") (for children under 3). Joint Exh. 10.

Several of Plaintiffs' witnesses attested to the limited nature of psychological services available through schools. Plaintiffs' Exhs. 3, 4, 6, 8. All agreed that services in schools are designed to meet only the educational needs of the child and do not address other needs such as behavioral services. Margaret Lang, who has firsthand knowledge of the limited nature of school services, stated that psychological services available through schools primarily consist of evaluations and re-evaluations. Plaintiffs' Exh. 6, ¶ 6. School behavioral plans are used during school hours and do not meet children's needs for behavioral services in the home or elsewhere in the community. Plaintiffs' Exh. 1, ¶ 32.

based either on distinctions set out in the medicaid statute or on the degree of the recipients' medical need. *See, e.g., White v. Beal,* 555 F.2d 1146, 1150–51 (3d Cir.1977). Plaintiffs argue that persons with autism have at least as great a medical need for psychological services as others who are eligible to receive such services under the MHR program and mental health clinic criteria.

As noted above, the Court is persuaded that class members diagnosed with autism have such a need for the services at issue and that federal law requires the State to provide those services. However, given the discretion that federal law grants the State to structure its own medicaid program, and given the Court's belief that other remedies can be fashioned to provide class members with the necessary services, the Court is not willing at this time to find that the exclusion is *per se* a violation of federal law.

8. In an attempt to acquire such information, Mary Norris sent a survey to 72 Rural Health Clinics and Federally–Qualified Health Clinics. 44 surveys were returned. Of these only the East Jefferson Community Health Center and the New Orleans Health Care Homeless Program provide clinical social worker and/or psychological services. They have no particular specialty. Joint Exhibit 1, ¶ 7.

Dewan Sheppard, the parent of a class member, testified by declaration that she had been unable to obtain behavioral services for her son, Christopher, through his school, even though he is in a special class for autistic children. Personnel at his school did not seem knowledgeable about behavioral health services. Plaintiffs' Exh. 9, ¶¶ 6, 7.

### Physician's Offices

DHH asserts that behavioral and psychological services are available to class members with autism through physicians offices. Bruce Gomez, the Chief of Program Operations in Louisiana Medicaid's Bureau of Health Services Financing, testified that a child with autism who is exhibiting disruptive behavior at home can access psychological services through physicians' or psychiatrists' offices.[9] Def.'s Exh. 9, ¶ 5; Def.'s Exh. 16. Relying primarily on this method of access, DHH asserts that psychological services are in fact reimbursable through medicaid notwithstanding the prohibition against direct enrollment. In support of this avenue of access, DHH points out that individual speech and occupational therapists, who are not allowed to enroll as medicaid providers, render services which are reimbursable through other types of providers enrolled in medicaid.

Although this avenue of access seems promising at first blush, it fails as a practical matter because unlike speech and occupational therapists, psychologists generally have independent practices, i.e., they do not provide services through other providers. Dr. Richard Blocker (Plaintiffs' Exh. 2, ¶ 4) and Dr. Theresa Johnson (Plaintiffs' Exh. 4, ¶ 8), both licensed psychologists who treat autistic children, testified that their services are billed independently and not through physicians. Geri Landry, administrative assistant for the Louisiana State Autism Chapter, maintains a resource book of various providers of services for children with autism. She stated that she was not aware of any psychologists who provide psychological services to medicaid recipients with autism through a physician's office. Plaintiffs' Exh. 5, ¶ 9. DHH was unable to name a single psychologist who provides behavioral services to class members through a physician's office.

And while DHH has strenuously objected to testimony by several of Plaintiffs' witnesses who stated that psychologists' services were not reimbursable through medicaid, the State cannot deny that its June 1998 Louisiana Medicaid Provider Update states in no uncertain terms that psychological testing and psychotherapy are *not* payable under the State's medicaid program. Plaintiffs' Exh. 13. There is no reason to believe that providers will search for means of circumventing this directive.

After considering all of DHH's current offerings, the Court is persuaded by Plaintiffs' contention that the availability of behavioral and psychological services, to class members diagnosed with autism, is more theoretical than actual under the current system. Under the structure of the current system, it would seem to be more the exception than the rule that class members with autism would have access to psychological services. Given that Plaintiffs are entitled to these mandatory services, the current system falls woefully short of complying with federal law. DHH's failure to make behavioral and psychological services available to all EPSDT recipients who need them violates the requirement of 42 U.S.C. § 1396d(r)(5) that Defendant provide all services within the scope of 42 U.S.C. § 1396d(a) necessary to correct or ameliorate health conditions of EPSDT recipients.

### III. REMEDY

Having found that DHH's current system fails to provide services mandated by federal law, the Court now must fashion an

---

9. For instance, through a physician's office, a service may be rendered and billed as any code 99201 through 99205, or 99211 through 99125.

appropriate remedy. In addition to satisfying the EPSDT mandate, any such remedy would also have to conform to the other mandates of federal medicaid law such as the freedom of choice (42 U.S.C. § 1396a(a)(23); 42 C.F.R. § 431.51(b)(1)) and equal access (42 U.S.C. § 1396a(a)(30)(A); 42 C.F.R. § 447.204) provisions.

Plaintiffs' chosen remedy, and one which would likely meet all necessary federal mandates, is for the State to allow psychologists to directly enroll in the medicaid program as providers of services to class members. DHH argues that such a remedy would have sweeping effects on the State's medicaid program and is much broader than necessary to remedy the shortcomings of the system as they pertain to Plaintiffs' complaints. During closing arguments, the Court asked counsel for both sides to profer possible remedies to address Plaintiffs' needs. Based upon their responses, there seemed to be a chance that the parties could agree on a remedy short of direct enrollment that would comply with the State's obligations under federal law.

Accordingly, the Court will pretermit fashioning a remedy at this time. Rather, the Court **ORDERS** the parties to confer and jointly submit, for the Court's consideration, a proposed remedy for the violations of federal law discussed above. In the event the parties are unable to reach an agreement, each side is to submit its own proposal(s) accompanied by a memorandum addressing how the proposal(s) [10] meets all federal mandates. Proposals and memoranda, whether joint or individual, are to be submitted within *forty-five (45)* days of entry of these Findings of Fact and Conclusions of Law.

---

**10.** If the parties cannot agree on a single proposal, then each side can submit one or more proposals. If multiple proposals are submitted by a party, counsel should rank them in order of preference.