NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0523n.06

No. 08-3931

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 29, 2009
LEONARD GREEN, Clerk

| | |
|---|---|
| PARENTS' LEAGUE FOR EFFECTIVE AUTISM SERVICES; X.C., a minor by and through his parent, A.C.; W.G., a minor by and through his parent, K.G.; K.W., a minor by and through his parent, A.W., <br><br> Plaintiffs-Appellees, <br><br> v. <br><br> HELEN E. JONES-KELLEY, in her official capacity as Director of the Ohio Department of Job and Family Services; SANDRA STEPHENSON, in her official capacity as Director of the Ohio Department of Mental Health, <br><br> Defendants-Appellants, <br><br> KERRY WEEMS, in his official capacity as Acting Administrator, Centers for Medicare & Medicaid Services, <br><br> Defendant. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |

BEFORE: KENNEDY, GIBBONS, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. Defendants Helen Jones-Kelly, Director of the Ohio Department

of Job and Family Services, and Sandra Stephenson, Director of the Ohio Department of Mental

Health, appeal the district court's grant of a preliminary injunction enjoining the implementation of

1

two amended state administrative rules. The Parents' League for Effective Autism Services, along with three children with autism and their guardians, brought this suit under 42 U.S.C. § 1983 claiming violations of their rights under federal Medicaid law. Plaintiffs claimed that amendments to state administrative rules promulgated by defendants deprived them of services required by the federal Early and Periodic Screening, Diagnostic, and Treatment program. The district court granted plaintiffs' request for a temporary restraining order and preliminarily enjoined the implementation of the amended rules. The district court found that plaintiffs have a likelihood of success on the merits of their claims, that plaintiffs would suffer irreparable injury absent preliminary injunctive relief, that Ohio would not be harmed by the injunction, and that the public interest would be served by the issuance of the preliminary injunction. The district court did not abuse its discretion in weighing these four factors when it granted plaintiffs' request for a preliminary injunction.

## I.

Plaintiffs are three Medicaid-eligible children and their guardians, and the Parents' League for Effective Autism Services ("PLEAS"), an association of parents whose children receive services from Step by Step Academy ("SBSA") under Medicaid. SBSA is a nonprofit treatment center that focuses on providing Applied Behavioral Analysis ("ABA") services to children with autism.

Federal regulations define autism as a "developmental disability significantly affecting verbal and nonverbal communication and social interaction, generally evident before age three, that adversely affects a child's educational performance. Other characteristics often associated with

autism are engagement in repetitive activities and stereotyped movements, resistance to environmental change or change in daily routines, and unusual responses to sensory experiences." 34 C.F.R. § 300.8(c)(1)(i). According to plaintiffs' expert, ABA therapy is a "highly effective form of behavioral treatment" that uses a "one-on-one teaching approach that relies on reinforced practice of various skills," and "[t]he best treatment plan [for children with autism] will include ABA, the only treatment approach confirmed as effective by a comprehensive evaluation of all proposed therapies in a well know[n] government sponsored review process." Decl. of James A. Mulick, Ph.D., at ¶¶ 20, 21. (citing http://www.health.state.ny.us/community/infants_children/ early_intervention/autism/ index.htm).

> Plaintiff children receive ABA therapy, along with other services, from SBSA:
>
> Step by Step Academy provides treatment services exclusively for children with autism or related autism spectrum symptoms. This full-day, year round intervention is based on Applied Behavior Analysis, a system of controlling the environment, establishing sequential goals, providing discrete trials for learning with a high rate of repetition, insuring reinforcement of success in learning trials, and planned generalization training. Using one-to-one and small group intervention, the treatment focuses on the amelioration of autism symptoms and skill deficits. Individualized goals within the diagnostic criteria focus on each child's receptive and expressive language, communication, socialization, self-help skills, and general behavior patterns for optimal learning.

Decl. of Jeffrey A. Christiansen, Psy.D., staff psychologist with SBSA, at ¶ 5. Plaintiffs claim that this therapy provides significant benefits for the plaintiff children. Defendants note that SBSA's one-to-one ABA therapy is provided at great expense. Defendants claim that in fiscal year 2007, SBSA billed the Ohio Medicaid program approximately $2.6 million for services provided to 42 children, which is one-half of Ohio's expenditures in the specific Medicaid treatment program that

funded SBSA's services. SBSA's per pupil cost in 2007 was nearly five-times the average per pupil cost of other providers serving children with autism.

Defendant Helen Jones-Kelley is director of the Ohio Department of Job and Family Services ("ODJFS"), and is responsible for the supervision and operation of the Medicaid program in Ohio. Defendant Sandra Stephenson is the Director of the Ohio Department of Mental Health ("ODMH"), and is responsible for adopting rules and standards for services provided by community health facilities. ODJFS works with ODMH to promulgate the Ohio Administrative Code rules that govern Ohio's Medicaid program. Defendant Kerry Weems is the Acting Administrator of the Federal Centers for Medicare and Medicaid Services ("CMS"), an agency under the Department of Health and Human Services responsible for administering the federal Medicaid program.[1]

On August 13, 2007, CMS filed proposed rules that would limit Medicaid's coverage of rehabilitative services. 72 Fed. Reg. 45201. However, Congress placed a moratorium on these and other proposed restrictions on Medicaid spending, and therefore these rules were never adopted. *See* Pub. L. No. 110-28 § 7001(a); Pub. L. No. 110-252 § 7001(a) (extending moratorium on regulations restricting coverage of rehabilitative services until April 1, 2009); Pub. L. No. 111-5 § 5003(a), (d)(3) (January 4, 2009) (noting a "sense of Congress" that the proposed regulations relating to rehabilitative services should not be promulgated as final regulations).

---

[1]On June 20, 2008, the district court filed an order finding that CMS is a necessary party under Fed. R. Civ. P. 19(a). Plaintiffs filed an amended complaint adding defendant Kerry Weems.

After CMS proposed restrictions on rehabilitative services, ODJFS promulgated amendments to Ohio's Administrative Rules. The first amended rule, Ohio Admin. Code § 5122-29-17, redefined Ohio's Community Psychiatric Supportive Treatment ("CPST") program, which was the program that funded SBSA's services. The amendment limited CPST services to those that were rehabilitative in nature. The second amended rule, Ohio Admin. Code § 5101:3-27-02, redefined when Ohio's Medicaid program would cover community mental health services. This amended rule limited coverage to those services that were rehabilitative, and defined rehabilitative services as those that restore an individual to a prior functional level. These two amended rules were promulgated on February 28, 2008, and were set to go into effect on July 1, 2008.

On March 21, 2008, Gwendolyn Sampson, Acting Associate Regional Administrator at CMS, sent a letter to ODJFS raising concerns about whether SBSA's services are Medicaid-reimbursable expenditures:

> Step by Step has been billing Medicaid for community psychiatric supportive treatment (CPST) for children diagnosed with autism. CPST is a rehabilitative service under Ohio's State Plan intended to maximize the reduction of symptoms of mental illness in order to restore the individual's functioning. CMS generally views treatment for autism as habilitative rather than rehabilitative—as such, the CPST claims by Step by Step may not comply with Ohio's State Plan.

The letter indicated that CMS was deferring payment for the expenditures submitted by SBSA. ODJFS was provided the opportunity to justify these expenditures, but the record does not indicate whether ODJFS took any steps to provide CMS with further information. The letter from CMS used the definition of CPST services from the amended rules, not yet in effect.

On May 2, 2008, plaintiffs filed suit in the United States District Court for the Southern District of Ohio, claiming that Ohio's amended administrative rules violate federal Medicaid law. Specifically, plaintiffs asserted that the federal Early and Periodic Screening, Diagnostic, and Treatment ("EPSDT") program requires Ohio, as a voluntary state recipient of federal Medicaid funds, to provide eligible children various treatment services. Plaintiffs claim that SBSA's ABA therapy is covered as a mandatory rehabilitative service under EPSDT, and that the rejection of funding for these services under the amended Ohio administrative rules would violate EPSDT's mandate. Plaintiffs moved for a temporary restraining order enjoining defendants from implementing the amended rules.

The district court held a hearing on plaintiffs' motion for preliminary injunctive relief. On June 30, 2008, the day before the amended rules were to take effect, the district court granted plaintiffs' motion for a temporary restraining order. *Parents League for Effective Autism Servs. v. Jones-Kelley*, 565 F. Supp. 2d 905 (S.D. Ohio 2008). First, the district court found that abstention was not required under the *Burford* abstention doctrine. *Id.* at 913-14. Second, the court found that preliminary injunctive relief was appropriate because: (1) plaintiffs have a strong likelihood of showing that the EPSDT-mandated services under Medicaid law, specifically 42 U.S.C. § 1396d(a)(13), require Ohio to cover SBSA's services and that Ohio's amended administrative rules would unlawfully deny plaintiffs these mandatory services; (2) plaintiffs would suffer irreparable injury if the amended rules were implemented because they would experience severe regression in their symptoms; (3) Ohio will not be harmed by the preliminary injunctive relief because complying

with federal Medicaid law is not a harm; and (4) the public interest will be served by preliminary

injunctive relief because the early treatment of autism has been shown to provide significant

improvement and the cost of providing care will be greater if these individuals do not receive

treatment at an early stage.[2] *Id.* at 914-18. On July 1, 2008, the district court granted a preliminary

injunction based on the reasons set forth in its June 30, 2008, memorandum.[3]

Defendants filed a motion to stay the preliminary injunction, but the district court denied this

request. Defendants appealed the district court's order granting the preliminary injunction.[4]

## II.

The district court did not abuse its discretion in granting plaintiffs' request for preliminary

injunctive relief enjoining defendants from implementing the two amendments to the administrative

rules. This case involves an alleged conflict between an ambiguous federal Medicaid provision and

amendments to two of Ohio's administrative rules. In addition, the federal agency responsible for

---

[2]On the same day, the district court denied defendants' motion to dismiss. *Parents League for Effective Autism Servs. v. Jones-Kelley*, 565 F. Supp. 2d 895 (S.D. Ohio 2008). In this order, the district court found that plaintiffs have standing to sue and that plaintiffs have alleged violations of a right enforceable through 42 U.S.C. § 1983. Defendants did not appeal this interlocutory order.

[3]Normally, an appellate court does not have jurisdiction to review the grant of a temporary restraining order. It is clear from this order, however, that in addition to granting plaintiffs' motion for a temporary restraining order, the court also granted a preliminary injunction and both parties treat the order as a preliminary injunction. This court has jurisdiction to review the preliminary injunction under 28 U.S.C. § 1292(a).

[4]On appeal, defendants do not challenge the district court's ruling on the inapplicability of *Burford* abstention.

administering the Medicaid program has yet to take a position on the issues relevant to this case. At this stage of the litigation, we are not deciding that plaintiffs will succeed in showing a violation of their rights under Medicaid law, but only that the district court did not abuse its discretion in concluding that the four factors involved in reviewing a request for preliminary injunctive relief on balance weighed in favor of granting plaintiffs' requested injunctive relief. *See Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000) (reciting the four-factor test).

The district court properly considered the extent to which: (1) plaintiffs have a likelihood of success with regard to whether Ohio is required under the federal Medicaid statute to cover SBSA's ABA therapy when medically necessary, and whether the amended Ohio administrative rules effectively cut off funding for these services; (2) plaintiffs would suffer irreparable injury absent an injunction; (3) the injunction would not cause substantial harm to others; and (4) the public interest would be served by issuance of a preliminary injunction. The district court did not abuse its discretion in finding that these factors weigh in favor of granting preliminary injunctive relief, and the court has not "relied upon clearly erroneous findings of fact, improperly applied the governing law, or used an erroneous legal standard." *Tumblebus, Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005).

## A. Likelihood of success on the merits

"The preliminary question of whether a movant is likely to succeed on the merits is a question of law which we decide de novo." *Tumblebus*, 399 F.3d at 760. The district court

determined that plaintiffs have a likelihood of success on the merits of their claims because: 1) federal Medicaid provisions likely require coverage of SBSA's ABA therapy when determined to be medically necessary; and 2) the amendments to the Ohio administrative rules would have the combined effect of cutting off funding for these services.

### 1. Whether 42 U.S.C. § 1396d(a)(13) covers the services provided by SBSA

The ambiguities in the federal Medicaid provision requiring reimbursement for rehabilitative services make a definitive determination on coverage of specific treatments a difficult proposition, especially without the input of CMS on these issues. This factor accordingly does not weigh strongly for or against a preliminary injunction.

Because Ohio accepted federal Medicaid funds, the state Medicaid plan must provide for EPSDT screening services as defined by 42 U.S.C. § 1396d(r) and provide: ". . . corrective treatment the need for which is disclosed by such child health screening services." 42 U.S.C. § 1396a(a)(43)(C). Section 1396d(r) requires states to provide several specific services and:

> [s]uch other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) of this section to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan.

§ 1396d(r)(5). Taken together, these provisions require Ohio to provide EPSDT-eligible children all of the services in subsection § 1396d(a) that are determined to be medically necessary.

Section 1396d(a) includes 28 categories of services that Ohio must fund for eligible children under EPSDT's mandate. Most relevant to this case is § 1396d(a)(13), which requires states to provide:

> other diagnostic, screening, preventive, and rehabilitative services, including any medical or remedial services (provided in a facility, a home, or other setting) recommended by a physician or other licensed practitioner of the healing arts within the scope of their practice under State law, for the maximum reduction of physical or mental disability and restoration of an individual to the best possible functional level.

§ 1396d(a)(13).

Though § 1396d(a)(13) does not explicitly address the services provided by SBSA, it arguably does so when the services are medically necessary.

The majority of defendants' arguments are based on their classification of SBSA's services as habilitative and therefore outside the scope of EPSDT's mandates. Defendants argue that § 1396d(a)(13) only mandates rehabilitative services, that SBSA's ABA therapy is exclusively habilitative, and that habilitative services are only provided for under separate, non-mandatory Medicaid provisions.[5] In its opinion and order denying defendants' motion to stay the injunction,

---

[5]Federal regulations define "rehabilitative services" as:

> any medical or remedial services recommended by a physician or other licensed practitioner of the healing arts, within the scope of his practice under State law, for maximum reduction of physical or mental disability and restoration of a recipient to his best possible functional level.

42 C.F.R. § 440.130(d). In a section dealing with state waiver programs, the Medicaid Act defines "habilitative services" as:

the district court rejected this argument stating: "After careful study of the relevant statutes and regulations, this Court concluded that th[e habilitative versus rehabilitative] dichotomy has no relevance to medical or remedial services for children when the treatment has been recommended by a physician or other licensed practitioner for the 'maximum reduction of a physical or mental disability.'" *Parents League for Effective Autism Servs. v. Jones-Kelley*, 2008 WL 2796744, at \*1 (S.D. Ohio July 17, 2008). The district court noted the potential overlap between services classified as habilitative or rehabilitative, and found that plaintiffs have a strong likelihood of showing that SBSA's services fall under the definition of services required under § 1396d(a)(13).

The district court found that SBSA's ABA therapy "is a medically necessary service which provides the maximum reduction of a mental or physical disability." *Parents League*, 565 F. Supp. 2d at 917. There was medical evidence before the district court to support the factual aspects of this conclusion. Defendants argue, however, that in addition to the "maximum reduction" element, § 1396d(a)(13) requires "restoration of an individual to the best possible functional level," and that "restoring" in this context excludes SBSA's services because the children it serves did not once have a functional level that the therapy attempts to restore.

It is true that this provision can be read to mandate only services recommended by a physician that provide *both* a "maximum reduction of physical or mental disability and restoration

---

> services designed to assist individuals in acquiring, retaining, and improving the self-help, socialization, and adaptive skills necessary to reside successfully in home and community based settings.

42 U.S.C. § 1396n(c)(5)(A).

of an individual to the best possible functional level." However, this provision can also be read to mandate *both* services recommended by a physician "for the maximum reduction of physical or mental disability," and services recommended by a physician for the "restoration of an individual to the best possible functional level." The choice between two ways to read "and" in a statute is often made by looking to "context and common sense." *OfficeMax, Inc. v. United States*, 428 F.3d 583, 597 (6th Cir. 2005). "Whether to interpret the preceding words as distributed over the conjoined elements or not depends on the context of the sentence, and what we externally know about the conjoined elements." *Id.* at 600 (Rogers, J., dissenting). The language of the statute supports either reading, and there are reasons, relied on by the district court, to read the statute plaintiffs' way.

*First*, § 1396d(a)(13) "reflects the extremely broad EPSDT obligation." *Parents League*, 565 F. Supp. 2d at 912. Defendants' reading of § 1396d(a)(13) to cover only services that restore a child to a prior skill level would arguably "mean that no child who is born with a disability, could ever receive rehabilitative services." *Parents League*, 565 F. Supp. 2d at 916. Such an outcome arguably "does not comport with the broad coverage afforded under the EPSDT mandate." *Id.*

*Second*, cases from other circuits have concluded that § 1396d(a) covers services that are arguably similar to the ABA therapy provided by SBSA. *See Pediatric Specialty Care, Inc. v. Arkansas Dept. of Human Services*, 293 F.3d 472, 480 (8th Cir. 2002); *Chisholm v. Hood*, 133 F. Supp. 2d 894 (E.D. La. 2001).

*Third*, no administrative interpretations of § 1396d(a)(13) appear to clarify or restrict the provision in the way suggested by defendants. Defendants cite several administrative materials that state that "habilitation services cannot be provided pursuant to 42 U.S.C. §§ 1396d(a) or 1396d(a)(13)." These materials simply state that habilitation services can only be funded through other Medicaid provisions, such as those dealing with ICF/MR residents or approved Medicaid waivers. These materials do not support the proposition that ABA therapy is exclusively habilitative, which plaintiffs dispute, or that ABA therapy should not otherwise be covered under § 1396d(a).

The district court's attempts to get the federal government's view of the meaning of § 1396d(a)(13) appear to have been elusive. In a case such as this, the federal court is entitled to a clear statement of the federal agency's interpretation of the federal Act that it administers. On March 21, 2008, CMS sent a letter to ODJFS deferring payment on claims made by SBSA and stated that "CMS generally views treatment for autism as habilitative rather than rehabilitative—as such, the CPST claims by Step by Step may not comply with Ohio's State Plan." However, during the hearing on plaintiffs' motion for preliminary injunctive relief, the district court questioned a representative from CMS in an attempt to nail down the agency's official position on the matter:

> **THE COURT:** Does CMS have a position on whether these services are covered under the Medicaid Act?
> **MR. D'ALESSANDRO:** Your Honor, I hate to use the word "it depends," but the answer is, it depends on the service. And I think that's what the deferral process is going to decide for all of us. . . . And I think the State may have spoken a little too strongly when it said we have decided not to pay. There has been no such decision not to pay. That's what the deferral process is for.
> Your Honor, it's our understanding that the deferral letter may have come about based on information gleaned from a county agency which was providing funds to Step-by-Step, the county advised the state, and the deferral process was started.

> I would like to note that the deferral letter, . . . I will acknowledge, Your Honor, that the language used by CMS in the letter of March 21st does appear to hone in on one issue, the issue of rehabilitative versus habilitative. I think that may have been an unfortunate choice by the Acting Associate Regional Administrator to hone in on that. I think all coverage and eligibility and reimbursement issues are in play during the deferral process.
>
> . . .
>
> To any extent—and I don't believe it was their intent, but to any extent that the State left the impression that there is a done deal here, I don't think that's the case.

The agency's uncertainty on these issues does not contradict the district court's conclusion that plaintiffs have a likelihood of showing that these services are required under the federal Medicaid statute.

In addition to the agency's stated uncertainty in this case, proposed regulations further reflect the ambiguity of § 1396d(a)(13). In 2007, CMS proposed to amend the regulations regarding "rehabilitative services" because of concerns that states were using § 1396d(a)(13) to cover services that were not truly "rehabilitative." 72 Fed. Reg. 45201 (citing as an example "behavioral treatment services in 'wilderness camps,' juvenile detention, and similar facilities where youth are involuntarily confined" that should fall "under the domain of the juvenile justice or youth systems in the State, rather than Medicaid."). Even if these proposed regulations would support defendants' position, Congress placed a moratorium on the final adoption of these regulations. *See* Pub. L. No. 110-28 § 7001(a); Pub. L. No. 110-252 § 7001(a) (extending moratorium on regulations restricting coverage of rehabilitative services until April 1, 2009); Pub. L. No. 111-5 § 5003(a), (d)(3) (January 4, 2009) (noting a "sense of Congress" that the proposed regulations relating to rehabilitative services should not be promulgated as final regulations). This situation shows the current

uncertainty regarding the definition of services in § 1396d(a)(13), which makes it even harder for us to find an abuse of discretion when the district court weighed in plaintiffs' favor the likelihood of success with respect to whether SBSA's services are required under § 1396d(a)(13).

### 2. Whether implementation of the Ohio amended rules would violate federal Medicaid laws

The district court also found a likelihood of success on the merits "because the proposed administrative rules will effectively cut off funding for medically necessary services." *Parents League*, 565 F. Supp. 2d at 917. Again, while it is not clear that this is so, the district court did not abuse its discretion by weighing the likelihood of success on this issue in favor of plaintiffs.

In response to concerns over the federal approval of funding of SBSA's services, the Ohio Department of Job and Family Services ("ODJFS") and the Ohio Department of Mental Health ("ODMH") promulgated rules amending the state administrative provisions that previously covered SBSA's services. Ohio Administrative Code section 5122-29-17 defines Community Psychiatric Supportive Treatment ("CPST") services, which is the general program under which SBSA receives its funding. The prior rule stated that:

> Community psychiatric supportive treatment (CPST) service provides an array of services delivered by community based, mobile individuals or multidisciplinary teams of professionals and trained others. Services address the individualized mental health needs of the client. They are directed towards adults, children, adolescents and families and will vary with respect to hours, type and intensity of services, depending on the changing needs of each individual.
>
> The purpose/intent of CPST services is to provide specific, measurable, and individualized services to each person served. CPST services should be focused on

> the individual's ability to succeed in the community; to identify and access needed services; and to show improvement in school, work and family and integration and contributions within the community.

Ohio Admin. Code § 5122-29-17(A).

> The amendments to this provision focus the program on rehabilitative services:

> Community psychiatric supportive treatment (CPST) service is a rehabilitative service intended to maximize the reduction of symptoms of mental illness in order to restore the individual's functioning to the highest level possible. CPST supports the individual's ability to take responsibility for managing his/her mental illness and achieving and maintaining his/her rehabilitative and/or recovery goals.

Ohio Admin. Code § 5122-29-17(A) (as amended). The amended rule contained extensive additional changes to this code provision that are not relevant to this case.

Ohio Administrative Code § 5101:3-27-02 defines when the Ohio Medicaid program will cover community mental and health services. The amendments to this section require services to be rehabilitative and provide a new definition of rehabilitation:

> The following describes those services reimbursable as medicaid community mental health service when **they are both rehabilitative and** rendered by eligible medicaid providers. **Rehabilitative services provide for the maximum reduction of mental illness and are intended to restore an individual to the best possible functional level. The services shall meet the principles set forth in rule 5101:3-1-02 of the Administrative Code.**

Ohio Admin Code § 5101:3-27-02(A) (amended language in bold).

These amended rules arguably conflict with federal Medicaid law because the amendments to rule 5101:3-1-02 "reflect a much more narrow definition of 'rehabilitative' . . . . The federal regulations do not require that the rehabilitative services reduce 'mental illness.'" *Parents League*, 565 F. Supp. 2d at 910. The more apparent conflict, however, stems from the Ohio rules'

"restoration" requirements. As noted in Part II.A.1, *supra*, the relevant federal Medicaid provisions do not necessarily require rehabilitative services to involve both a "maximum reduction of physical or mental disability" and a "restoration of an individual to the best possible functional level" for each individual. The language of the amended Ohio rules, however, narrows the definition of rehabilitative services by requiring restoration to the best functional level. Under the Ohio amended rules, rehabilitative services are "intended to maximize the reduction of symptoms of mental illness *in order to restore* the individual's functioning to the highest level possible," Ohio Admin. Code § 5122-29-17(A) (as amended) (emphasis added), and "provide for the maximum reduction of mental illness *and are intended to restore* an individual to the best possible functional level," Ohio Admin Code § 5101:3-27-02(A) (as amended) (emphasis added).

In addition to noting the potential conflict between the amended rules and the federal Medicaid statute, the district court focused on the likely effects of defendants' implementation of these rules. "Because the proposed administrative rules will *effectively* cut off funding for medically necessary services, Plaintiffs have established a likelihood of success on the merits." *Parents League*, 565 F. Supp. 2d at 917 (emphasis added). "The proposed amendments specifically target the provision of CPST services to these children." *Id.* "The evidence is clear that the State adopted the new rules to avoid having to pay for services which it was concerned would not be reimbursed by CMS." *Id.* at 917-18.

The district court did not abuse its discretion in relying on the likelihood that plaintiffs' will be able to show that the amended rules would effectively deny funding for SBSA's ABA therapy.

The rules were promulgated in response to concerns over federal funding of this program, defendants began seeking alternate services for the children previously served by SBSA, and everything in defendants' briefing indicates that they believe SBSA's services to be habilitative in nature and not covered by the new rules or the federal EPSDT mandate.

**B. Irreparable injury to plaintiffs**

The district court also did not abuse its discretion in weighing the possibility of irreparable injury to plaintiffs because, as noted in the previous section, defendants appear to interpret the amended rules to exclude SBSA's ABA therapy from funding under Ohio's CPST program. In addition, medical and personal testimony indicated that the plaintiff children would suffer irreparable injury in the form of severe regression of symptoms if SBSA's services are no longer available, and plaintiffs could not receive comparable services from other providers that provide services under other sources of federal or state funding.

Defendants argue that plaintiffs will not suffer under the amended rules because plaintiffs have other avenues of receiving Medicaid coverage for SBSA's services if the services are medically necessary. For example, plaintiffs can request prior authorization of the ABA therapy provided by SBSA, claiming that this service is required under federal Medicaid law. Because ODJFS and ODMH appear not to accept that ABA therapy is rehabilitative under the amended rules or § 1396d(a)(13), this path may simply lead back to a dispute in the courts over the coverage of ABA therapy under the EPSDT mandate.

**C. Substantial harm to others and the public interest**

On appeal, defendants do not raise any independent arguments related to the harm to nonparties or the public interest. As to the public interest, the district court reasonably weighed the public's interest against defendants at this stage of the litigation.

**III.**

At this stage of the litigation, we do not resolve the substantive legal issues on the merits. Because the district court did not abuse its discretion in entering the preliminary injunction, we AFFIRM.